SEXTON v PETZ

Docket No. 95614. Submitted May 10, 1988, at Detroit. Decided
     August 15, 1988.

Donald Sexton underwent triple coronary bypass surgery follow-
     ing a diagnosis of arteriosclerotic heart disease. Sexton filed a
     claim for workers' compensation benefits and was requested by
     his employer to submit to a physical examination conducted by
     Thomas Petz, M.D. Following the examination, Petz concluded
     that Sexton's disease was not a result of his employment and
     that Sexton was physically capable of resuming employment.
     Sexton returned to work and ruptured his surgical scar while
     performing a work-related function. Sexton, along with Mary
     Lou Sexton, filed an action in the Wayne Circuit Court against
     Petz, alleging medical malpractice, negligence, intentional in-
     fliction of emotional distress and gross negligence. The trial
     court, Patrick J. Duggan, J., granted partial summary disposi-
     tion in favor of defendant on the malpractice and intentional
     infliction of emotional distress claims, ruling that no genuine
     issue of material fact existed and defendant was entitled to
     judgment as a matter of law. Defendant, contending that the
     remaining counts should also have been dismissed, sought and
     was granted leave to file an interlocutory appeal.

     The Court of Appeals *held*:

     1. A physician who examines an employee at the request of
     the employer does not owe such a duty of care to the employee
     as will subject him to liability for malpractice where the
     employee did not seek or receive medical advice or treatment
     from the physician or employ the physician.

     2. Plaintiffs' claims of negligence and gross negligence are
     merely restatements of their malpractice claim. Thus, these
     claims should likewise have been dismissed.

     Reversed.

1. PHYSICIANS AND SURGEONS — NEGLIGENCE — MALPRACTICE —
     CAUSE OF ACTION — EXAMINATION FOR EMPLOYER.
     A physician does not owe such a duty of care to a plaintiff

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 200 *et seq.*
See the Index to Annotations under Physicians and Surgeons.

employee as will subject him to liability for malpractice where the physician was engaged by the plaintiff's employer to examine the plaintiff in connection with a claim for workers' compensation benefits and the plaintiff did not seek or receive medical advice or treatment from the physician or employ the physician.

2. WORDS AND PHRASES — MEDICAL MALPRACTICE.

Medical malpractice is the failure of a member of the medical profession, employed to treat a patient professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *David K. Barnes, Jr.*), for plaintiffs.

*Schureman, Frakes, Glass & Wulfmeier* (by *Charles D. Brown*), for defendant.

Before: McDONALD, P.J., and KELLY and W. F. LAVOY,* JJ.

KELLY, J. Defendant brings this interlocutory appeal from the trial court order that denied in part defendant's motion for summary disposition. Plaintiffs' complaint alleged medical malpractice, negligence, intentional infliction of emotional distress and gross negligence. Summary disposition was granted to defendant on the malpractice and intentional infliction of emotional distress claims pursuant to MCR 2.116(C)(10); there being no genuine issue of material fact, defendant was entitled to judgment as a matter of law. Defendant argues that the remaining two counts, negligence and gross negligence, should likewise have been dismissed. We agree and reverse.

Plaintiff husband was an employee of the City of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Jackson Fire Department and at the time in question was the chief fire inspector. In January, 1983, he developed severe chest pains and was diagnosed as having arteriosclerotic heart disease. Consequently, a triple coronary bypass operation was performed within approximately one month of plaintiff's diagnosis.

After surgery plaintiff filed a workers' compensation claim, alleging that his disease was caused by his employment. For this reason, plaintiff was requested to submit to a physical examination. Defendant performed that examination.

Following the examination, defendant concluded that the disease was not a result of plaintiff's employment as a fire fighter. Defendant also reported that plaintiff was "physically capable of resuming employment as previously performed for the City of Jackson." Thereafter, plaintiff returned to work and on October 15, 1983, while investigating a fire, plaintiff attempted to lift a heavy object, causing his surgical scar to rupture. This action followed.

In denying defendant's motion for summary disposition on the two counts, the trial court, relying in part on *Rogers v Horvath,* 65 Mich App 644; 237 NW2d 595 (1975), stated that "a physician owes a duty to a person that he or she is examining at the request of an employer to use reasonable care in conjunction with such examination and the reporting of the results of such examination."

In *Rogers,* plaintiff's compensation benefits were terminated and she filed a claim for continuation with the Bureau of Workmen's Compensation. Her employer then sent plaintiff to be examined by a physician who reported to the employer and testified at a subsequent hearing that there was nothing wrong with plaintiff. Thereafter, Rogers

brought an action against the doctor, alleging malpractice, fraud and libel. In regard to plaintiff's malpractice claim, the *Rogers* Court stated at 647:

> Plaintiff did not employ the defendant, nor did she seek or receive medical advice or treatment. Under such circumstances, the defendant did not owe plaintiff any duty arising from a physician-patient relationship. This is not to say that a physician who examines a person for reasons other than diagnosis or treatment and for the benefit of some one other than the examinee owes no duty of due care to that person. Rather, we hold that the physician in such a case does not owe such a duty of care as will subject him to liability for malpractice.

As is evident from this quotation, the *Rogers* Court was not faced with deciding whether or not claims of negligence and gross negligence are available in the within situation, that is, where plaintiff brings a cause of action against a doctor who performed an examination at the request of an employer and reported to the employer that the plaintiff was able to return to work.

A similar situation was presented in *MacDonald v Barbarotto,* 161 Mich App 542; 411 NW2d 747 (1987). In *MacDonald,* plaintiff was disabled from employment and was required to submit to a medical examination. The examination was conducted by a chiropractor who, when asked, reported to the employer that plaintiff was not disabled and could return to work. Plaintiff then returned to work and was soon reinjured.

Plaintiff MacDonald's original complaint brought a malpractice claim against the chiropractor. Eventually this claim was changed to one for negligence and fraud.

On the issue of negligence, the *MacDonald* Court, at 549-550, stated:

Clearly, plaintiff alleges a breach of duty which arose out of the professional relationship between defendant, a licensed chiropractor, and plaintiff. Plaintiff in essence declares that defendant failed to properly discharge his professional duties, resulting in damage to plaintiff. Such is the key to a malpractice claim.

* * *

Plaintiff's allegations that defendant incorrectly identified plaintiff's medical condition and failed to consider the significance of plaintiff's physical symptoms indicate that defendant's negligence occurred, if at all, as a result of a failure to exercise a sufficient degree of professional skill. Thus, plaintiff's claim is based in malpractice.

Here, in alleging negligence, plaintiffs' complaint essentially claims that defendant failed to carefully and thoroughly examine plaintiff, defendant negligently failed to consider plaintiff's condition and statements by other treating physicians regarding his condition, and defendant negligently reported that plaintiff was able to return to work. In the gross negligence count, plaintiffs' complaint essentially claims that defendant was grossly negligent in examining plaintiff, considering plaintiff's statements and reporting plaintiff's condition following the examination. Plaintiffs in their brief on appeal go so far as to state that these claims arise out of defendant's examination and evaluation of plaintiff.

In *Adkins v Annapolis Hospital,* 116 Mich App 558, 564; 323 NW2d 482 (1982), quoting *Cotton v Kambly,* 101 Mich App 537, 540-541; 300 NW2d 627 (1980), lv den 411 Mich 1033 (1981), medical malpractice was defined as

the failure of a member of the medical profession, employed to treat a case professionally, to fulfill

the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science.

Our reading of plaintiffs' complaint leads us to the conclusion that plaintiffs are alleging no more than that defendant failed to properly discharge his professional duties in that he did not consider the significance of plaintiff's condition in regard to the demands of plaintiff's occupation and incorrectly diagnosed plaintiff's medical condition, which resulted in plaintiffs' damages. These separate counts of negligence and gross negligence appear to be nothing more than a restatement of plaintiffs' malpractice claim. Therefore, just as it was proper for the trial court to grant summary dispostion on plaintiffs' malpractice claim based on the lack of a patient-physician relationship, the claims asserting negligence and gross negligence should likewise have been dismissed.

Reversed.