MONUSKO v POSTLE

Docket Nos. 95314, 95355. Submitted May 4, 1988, at Grand Rapids.
     Decided February 23, 1989. Leave to appeal applied for.

     Jill Rose Monusko began prenatal care and treatment at Burns
     Clinic Medical Center, P.C., on November 22, 1977, prior to the
     birth of her second child, Loretta Monusko. She was not tested
     for her rubella status at any of her visits. On March 2, 1978,
     Mrs. Monusko was admitted to Northern Michigan Hospital,
     where Loretta was delivered. Mrs. Monusko was neither tested
     nor immunized for rubella during her stay in the hospital. On
     March 22, 1979, Mrs. Monusko returned to the Burns Clinic to
     have her IUD removed. She indicated to the doctor that she
     wished to have a third child. She was neither tested for nor
     immunized against rubella on that visit. Mrs. Monusko became
     pregnant again, acquired rubella, and the baby, Andrea, was
     born in a severely impaired physical and mental condition,
     suffering from rubella syndrome. In 1985, Jill Rose Monusko
     and Marty D. Monusko, co-conservators of the estate of Andrea
     Monusko, filed suit against Jack R. Postle, M.D., four other
     doctors, Burns Clinic Medical Center, P.C., and Northern Mich-
     igan Hospitals, Inc., in Emmet Circuit Court seeking, inter alia,
     recovery for Andrea Monusko's pain and suffering, mental
     anguish, and emotional trauma. The complaint essentially
     alleged a negligent failure to render appropriate prenatal care
     to Mrs. Monusko preceding the birth of her second child,
     including failure to conduct appropriate lab examinations,
     including a rubella test, and failure to render appropriate
     postpartum intraconceptional and gynecological care to Mrs.
     Monusko following the birth of her second child, including
     failure to perform tests to determine Mrs. Monusko's rubella
     immunity status and failure to immunize her against rubella.
     Defendants moved for summary disposition, arguing that they
     owed no duty to a plaintiff who was not yet conceived at the

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 248, 249,
     278, 279.
Liability for child's personal injuries or death resulting from tort
     committed against child's mother before child was conceived. 91
     ALR3d 316.

time of the acts or omissions alleged. The court, Richard M. Pajtas, J., denied the motion. The doctors and Burns Clinic filed an appeal by leave granted and Northern Michigan Hospitals, Inc., filed a separate appeal by leave granted. The appeals were consolidated.

The Court of Appeals *held:*

Plaintiffs have stated a cause of action in alleging that defendants' failure to administer the test and immunization specifically designed to prevent rubella syndrome resulted in Andrea's being born with rubella syndrome. Defendants owed a duty to Andrea, even though she was not conceived at the time of the alleged wrongful act. The direct connection between the test and immunization procedure and the harm in this case and the fact that the test and the preconception immunization are specifically designed to prevent rubella syndrome in children that are not yet conceived distinguishes this case from another Court of Appeals decision which held that there is no duty to a third party who was not a patient at the time of the alleged medical malpractice.

Affirmed.

MACKENZIE, P.J., dissented. She would hold that defendants owed no duty to Andrea Monusko not to breach the duty of care they owed to Jill Rose Monusko. She would reverse on the ground that plaintiffs failed to state a cause of action.

NEGLIGENCE — ACTIONS — INFANTS — RUBELLA SYNDROME — PHYSI-CIANS AND SURGEONS — HOSPITALS.

A child who is born in a severely impaired physical and mental condition due to rubella syndrome has a cause of action for damages for pain and suffering, mental anguish, and emotional trauma against her mother's doctors and hospitals for failure to administer the test and immunization specifically designed to prevent rubella syndrome in children that are not yet conceived where those doctors and hospitals treated the mother in connection with childbirth before the child was conceived and knew of the mother's desire to have another child.

*Levine, Benjamin, Tushman, Bratt, Jerris & Stein, P.C.* (by *Alvin L. Levine* and *Bruce L. Jerris*), for plaintiffs.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*), for defendants, appellants, and third-party plaintiffs Postle, Keith, Kutcipal,

Verburg, Kinne, and Burns Clinic Medical Center, P.C.

*Menmuir, Zimmerman, Rollert & Kuhn* (by *R. Jay Hardin, Esq.*), for Northern Michigan Hospitals, Inc.

Before: MacKenzie, P.J., and Shepherd and M. E. Dodge,* JJ.

Shepherd, J. These consolidated appeals come to us on denial of the defendants' motion for summary disposition as to Count I of plaintiffs' complaint. Count I seeks damages for plaintiff Andrea Monusko for a preconception tort. The issue is one of first impression in this jurisdiction. We affirm the decision of the trial court and conclude that such a cause of action exists on the facts of this case.

Andrea Monusko was born on February 10, 1980, in a severely impaired physical and mental condition, suffering from rubella syndrome. A complaint was filed on her behalf in 1985. The complaint sets forth three theories for recovery. We are here concerned with Count I, alleging what might best be termed a preconception tort. In passing, we note that a 1982 suit resulted in a settlement of the parents' claim for all past, present, and future medical and custodial expenses throughout Andrea's lifetime. The instant suit seeks recovery for plaintiff Andrea Monusko's pain and suffering, mental anguish, and emotional trauma.

Jill Rose Monusko began prenatal care and treatment at Burns Clinic on November 22, 1977, prior to the birth of her second child, Loretta Monusko. The individual defendant doctors pro-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

vide OB/GYN treatment at Burns Clinic. Mrs. Mon-
usko received prenatal care through February of
1978. She was not tested for her rubella status at
any of her visits.

On March 2, 1978, she was admitted to North-
ern Michigan Hospital, where Loretta was deliv-
ered by at least one of the Burns Clinic defen-
dants. Mrs. Monusko was neither tested nor immu-
nized during her stay in the hospital. She was
neither tested nor immunized during her Burns
Clinic visit. On March 22, 1979, Mrs. Monusko
returned to the Burns Clinic to have her IUD
removed. She indicated to the attending doctor
that she wished to have a third child. She was
neither tested nor immunized for rubella at that
visit.

Mrs. Monusko subsequently became pregnant
with Andrea, suffered from rubella, and Andrea
suffered the resulting difficulties. Rubella (a form
of measles) is a disease which, if contracted by a
pregnant woman, can result in damage to her
child.

Plaintiffs put forward the recommendation made
by the American College of Obstetricians and Gy-
necologists which states that a rubella test should
be given to the pregnant patient if her status is
unknown. They further rely on the ACOG standard
which states that the first postpartum examination
is "an optimal time for review of family planning
and for determining immunizations, including ru-
bella." In essence, the complaint alleges a negli-
gent failure to render appropriate prenatal care to
Mrs. Monusko preceding the birth of her second
child, Loretta, including failure to conduct appro-
priate lab examinations, including a rubella test,
and failure to render appropriate postpartum in-
traconceptional and gynecological care to Mrs.
Monusko following the birth of her second child,

including failing to perform tests to determine Mrs. Monusko's rubella immunity status and in failing to immunize her against rubella, all in contravention of the ACOG standards.

The hearing on the motion for summary disposition was held on June 19, 1986. The thrust of defendants' argument was that they owed no duty to a plaintiff not yet conceived. Defendants' motion was denied and they now appeal.

In reviewing a grant of summary disposition under MCR 2.116(C)(8), for failure to state a claim upon which relief can be granted, this Court is obligated to accept as true all well-pled facts and to determine whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323-324; 343 NW2d 164 (1984), cert den sub nom *E R Squibb & Sons v Abel,* 469 US 833; 105 S Ct 123; 83 L Ed 2d 65 (1984). A motion for summary disposition under MCR 2.116(C)(8) tests the genuineness of the claim by challenging the legal adequacy of the pleadings. *Id.*

The trial court, in its written opinion, stated the issue succinctly: "In general terms, the issue is whether or not a child, when born alive, has a cause of action for injury arising out of preconception negligent conduct." The issue has otherwise been stated: "Whether there was a duty under these circumstances to a plaintiff who was not in being at the time of a wrongful act." *Renslow v Mennonite Hospital,* 67 Ill 2d 348, 367; 367 NE2d 1250 (1977) (Dooley, J., concurring).

In the instant case we are confronted with the issue of duty. "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the

injured person." *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977). The question of duty depends in part on "forseeability—whether it is forseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." 400 Mich at 439.

Other jurisdictions have concluded that a doctor or hospital can have a duty to a not-yet-conceived plaintiff. In *Renslow v Mennonite Hospital, supra,* the plaintiff's mother was given a negligently administered blood transfusion some eight years prior to the plaintiff's birth. The plaintiff was born with brain and physical injuries caused by the transfusion of RH positive blood into the RH negative mother eight years prior. The Illinois Supreme Court concluded:

> The cases allowing relief to an infant for injuries incurred in its previable state make it clear that a defendant may be held liable to a person whose existence was not apparent at the time of his act. We therefore find it illogical to bar relief for an act done prior to conception where the defendant would be liable for this same conduct had the child, unbeknownst to him, been conceived prior to his act. We believe that there is a right to be born free from prenatal injuries foreseeably caused by a breach of duty to the child's mother.
>
> The extension of duty in such a case is further supported by sound policy considerations. Medical science has developed various techniques which can mitigate or, in some cases, totally alleviate a child's prenatal harm. In light of these substantial medical advances it seems to us that sound social policy requires the extension of duty in this case. [*Renslow* at 357-358.]

In *Bergstresser v Mitchell,* 577 F2d 22 (CA 8, 1978), the court held that under Missouri law a

child stated a cause of action against two doctors in a hospital for injuries allegedly sustained as the result of a negligently performed Caesarean section upon the child's mother several years prior to the child's birth. See also *Jorgensen v Meade Johnson Laboratories, Inc,* 483 F2d 237 (CA 10, 1973) (product liability case vacating district court dismissal and reinstating suit on behalf of children allegedly injured as the result of mother's birth control pill usage).

Defendants rely heavily on a New York case prohibiting recovery for an alleged preconception tort. In that case the plaintiff was born with brain damage allegedly the result of a perforated uterus the plaintiff's mother received during an abortion several years prior to the plaintiff's birth. *Albala v City of New York,* 54 NY2d 269; 429 NE2d 786 (1981). The court rejected the plaintiff's claim, principally on the basis of policy. Concluding that "foreseeability alone is not the hallmark of legal duty," the court ruled that it would require an extension of traditional tort concepts beyond manageable bounds to allow the plaintiff to go forward.

We cannot agree with that reasoning in the instant case. Here, plaintiffs have alleged that the failure of defendants to test Jill Rose Monusko for her rubella status and to immunize her against rubella prior to conception resulted in Andrea's injuries. The tests and immunization, relatively simple and straight-forward to administer, are designed specifically to alleviate the sort of injuries we have in this case. It is readily foreseeable that someone not immunized may catch rubella and, if pregnant, bear a child suffering from rubella syndrome. We conclude that plaintiffs have stated a cause of action in alleging that defendants' failure to administer the test and immunization specifically designed to prevent rubella

syndrome resulted in Andrea's being born with rubella syndrome. We hold that defendants owed a duty to Andrea, even though she was not conceived at the time of the alleged wrongful act.

Defendants make one further argument on the basis of a recent Supreme Court case. See *Sizemore v Smock*, 430 Mich 283; 422 NW2d 666 (1988). Defendants argue that any decision which would have the effect of expanding the class of potential plaintiffs should be left to the Legislature. In that case the Supreme Court stated that the common law of Michigan did not recognize an action by a parent for the loss of a child's society and companionship as a result of the negligent injury of the child. The Court concluded that any decision to extend claims for loss of consortium to include a negligent tortfeasor's liability for loss by a parent of a child's society and companionship should be determined by the Legislature. The Court stated: "Foreseeability of injury alone does not mandate recognition of a cause of action. Social policy must intervene at some point to limit the extent of one's liability." *Sizemore* at 293. The rationale behind the Court's decision to limit consortium liability rested in part on the "social consequences and economic burdens resulting to the public." *Sizemore* at 295.

We do not believe such reasoning controls the instant, limited facts. This case involves a plaintiff who, while not specifically contemplated, would have been the beneficiary of a test and immunization procedure specifically designed to alleviate the harm which resulted in this case. We note that when the Supreme Court concluded that it was necessary to recognize a common law negligence action for prenatal tortious conduct the Court sought guidance in the rulings of other jurisdictions, not from the Legislature. See *Womack v*

*Buchhorn,* 384 Mich 718; 187 NW2d 218 (1971). We believe our present holding, limited to the facts of this case, constitutes a recognition of a modest extension of the duty we ascribe to a physician against prenatal tortious conduct. We emphasize the direct connection between the test and immunization procedure and the harm in this case, and the fact that the test and the preconception immunization are specifically designed to prevent rubella syndrome in children that are not yet conceived. It is this central fact that distinguishes this case from *Malik v William Beaumont Hospital,* 168 Mich App 159; 423 NW2d 920 (1988), lv den 431 Mich 875 (1988), where it was held there is no duty to a third party who was not a patient at the time of the alleged medical malpractice. In *Malik* the treatment of the patient was not ordered for the benefit of her siblings and father who were the plaintiffs.

Affirmed.

M. E. DODGE, J., concurred.

MACKENZIE, P.J. *(dissenting).* The question presented in this case is whether medical malpractice allegedly committed against the mother of a child not yet conceived gives rise to a negligence cause of action in favor of the child if, after conception, the malpractice committed against the mother causes injury to the child during gestation. More specifically, the issue is whether an obstetrician/gynecologist owes a duty to a yet-to-be-conceived child not to breach the duty of care he owes to the unconceived child's mother. I would answer in the negative.

"Duty" comprehends whether a defendant is under any obligation to the plaintiff to avoid negligent conduct. *Moning v Alfono,* 400 Mich 425, 437;

254 NW2d 759 (1977). It is essentially a question whether the relationship between the actor and the injured person is such that there arises a legal obligation on the actor's part for the benefit of the injured person. *Moning, supra,* pp 438-439. The question whether there is the requisite relationship giving rise to a duty depends in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim. *Moning, supra,* p 439.

In this case, defendants' alleged wrongful conduct took place when they were treating the mother prior to the child's conception. Clearly, defendants owed a duty to the mother to treat her in accordance with professional standards. However, when defendants' alleged wrongful conduct took place, there was no relationship between defendants and the child upon which to predicate a duty owed to the child for the simple reason that the child did not exist. The majority appears to maintain that the child's conception was foreseeable and that this foreseeability gives rise to defendants' duty to the child. That reasoning is flawed. Under *Moning,* the question is whether it is foreseeable that the defendant's conduct may create a risk of harm to the plaintiff, not whether it is foreseeable that the plaintiff will exist. Under the majority's logic, all persons would be deemed to foresee, and thus owe a duty to, the future children of all other persons.

By not vaccinating the mother for rubella, the foreseeable risk of harm in this case was that the mother would contract the illness. The "victim" of defendants' conduct was the mother, not the yet-to-be-conceived child. Of course, it was possible that the mother would be pregnant when that risk turned into reality—pregnancy is almost always a possibility in a woman of childbearing years. That

possibility is not enough to create a legal duty in defendants to the gestating child, however. It was equally possible that the mother would contract rubella while not pregnant. The creation of a legal duty does not rise or fall on the serendipities of *when* the risk of harm materializes, but on the existence of a relationship between the actor and the plaintiff. Again, there was no such relationship in this case.

The majority's holding, that one may owe a duty to unconceived children, exposes to liability not only the medical profession but also parents-to-be and the general public for their conduct prior to a plaintiff's conception. Suppose, for example, that a thirteen-year-old boy becomes involved in drug abuse and ten years after stopping use of drugs fathers an infant with birth defects resulting from the earlier drug use. Under the majority's holding and *Plumley v Klein,* 388 Mich 1; 199 NW2d 169 (1972), abrogating parental immunity, the child might well be able to maintain an action against the father for injuries sustained as a result of the father's drug abuse ten years before conception. Or suppose that a thirteen-year-old girl is struck while crossing a street by a negligently driven automobile, sustaining fractures to her pelvis. At age thirty-three, she gives birth to an infant who sustains prenatal injuries from a malformation in the mother's pelvis caused by improper healing of the fractures. Under the majority's holding, it would be possible for the injured infant to maintain an action against the person who drove the automobile twenty years earlier. See *Preconception tort—The need for a limitation,* 44 Mo L R 143 (1979).

The majority's holding also creates the potential for exposure to liability well beyond the twenty-year period of the previous hypothetical. Suppose,

for example, that a hospital staff physician negligently administers medication to a four-year-old girl and the drug alters the girl's chromosome structure. At age thirty-five she gives birth to a daughter whose chromosome structure is damaged by the alteration in the mother's chromosomes, but the damage is undetected because no outward deformity appears. At age thirty-two, the daughter gives birth to a child suffering from a deformity resulting from the damage to the chromosome structures of the mother and grandmother. Under the majority holding, the deformed infant could quite possibly maintain an action against the hospital which two generations earlier provided the drug to the infant's grandmother. With the tolling of the statute of limitations for infancy, this cause of action would be maintainable eighty-one years after the offending drug was administered. See *Preconception Tort, supra.*

Yet another difficulty with the majority's holding is that it inherently creates for a woman's doctor a conflict of interest as between his patient and the patient's yet-to-be-conceived children. This conflict of interest problem was well-articulated by the majority in *Albala v City of New York,* 54 NY2d 269; 429 NE2d 786 (1981):

> [I]t is worth noting that the recognition of a cause of action under the circumstances of this case would have the undesirable impact of encouraging the practice of "defensive medicine". A physician faced with the alternative of saving a patient's life by administering a treatment involving the possibility of adverse consequences to later conceived offspring of that patient would, if exposed to liability of the magnitude considered in this case, undoubtedly be inclined to advise against the treatment rather than risk the possibility of having to recompense a child born with a

handicap. Accordingly, society as a whole would bear the cost of our placing physicians in a direct conflict between their moral duty to patients and the proposed legal duty to those hypothetical future generations outside the immediate zone of danger. [54 NY2d 274.]

Finally, and perhaps more fundamentally, it appears to me that the cause of action plaintiffs are asserting is not a negligence claim, but one of medical malpractice. This Court has defined medical malpractice as

> the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science. [*Sexton v Petz,* 170 Mich App 561, 565-566; 428 NW2d 715 (1988), quoting *Adkins v Annapolis Hospital,* 116 Mich App 558, 564; 323 NW2d 482 (1982), and *Cotton v Kambly,* 101 Mich App 537, 540-541; 300 NW2d 627 (1980), lv den 411 Mich 1033 (1981).]

Plaintiffs' reliance on the recommendations of the American College of Obstetricians and Gynecologists as an indicator of defendants' misfeasance strongly suggests a malpractice claim. Plaintiffs are alleging no more than that defendants failed to properly discharge their professional duties, which resulted in Andrea Monusko's injuries. See *Sexton, supra.* In medical malpractice cases, however, the physician's duty to render services within the applicable standard of care arises from the patient-physician relationship; the term "malpractice" denotes a breach of the duty owed by one rendering professional services to a person who has contracted for such services. See *Malik v William Beaumont Hospital,* 168 Mich

App 159, 168; 423 NW2d 920 (1988), citing *Rogers v Horvath,* 65 Mich App 644, 646-647; 237 NW2d 595 (1975), lv den 396 Mich 845 (1976). Here, a patient-physician relationship existed between the mother and defendants. The yet-to-be-conceived child in no sense contracted for defendants' rendition of preconception services to her future mother. Because the child seeks to recover for the injuries inflicted upon her which resulted from the alleged malpractice committed upon her mother when defendants failed to meet the professional standards of the American College of Obstetricians and Gynecologists, she has failed to state a cause of action. Compare *Malik, supra.*

The cause of action recognized by the majority requires the extension of traditional tort concepts beyond reasonable bounds. Defendants owed no duty to Andrea Monusko on these facts. Accordingly, I would reverse.