IN THE MATTER OF LOUIS KERLINSKY.

Suffolk. October 3, 1989. - November 13, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Canons of ethics, Compensation, Contingent fee agreement, Division of fees.

The Board of Bar Overseers was warranted in finding that an attorney had violated S.J.C. Rule 3:07, Canon 2, DR 2-106 (A) and (C), by taking a fee from a client in excess of the amount provided in a written contingent fee agreement. [72-74]

An agreement by two attorneys to divide a fee without full disclosure to and consent by the client constituted a violation of S.J.C. Rule 3:07, Canon 2, DR 2-107 (A) (1). [74]

An attorney's retaining possession of funds demanded by a client and undisputedly due him violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), prohibiting an attorney from engaging in conduct which reflects adversely on his fitness to practice law [74], and Canon 9, DR 9-102 (B) (4), requiring an attorney to deliver promptly to a client property which the client is entitled to receive [75].

The record of a disciplinary proceeding before the Board of Bar Overseers did not support the respondent attorney's contention that the matter should have been dismissed due to laches. [75-76]

A single justice of this court, after considering an information filed by the Board of Bar Overseers, including the record before the board, correctly ordered that an attorney pay certain funds to the estate of a former client and that he be publicly censured. [76-77]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on January 11, 1989.

The case was heard by *Lynch, J.*

*Louis Kerlinsky*, pro se.

*Nancy E. Kaufman*, Assistant Bar Counsel (*Daniel J. Klubock*, Bar Counsel, with her).

GREANEY, J. A single justice of this court has ordered that Attorney Louis Kerlinsky pay certain funds to the estate of a

former client and that Mr. Kerlinsky be publicly censured. The single justice's order entered after consideration of an information filed by the Board of Bar Overseers (board), including the extensive record compiled before the board. Mr. Kerlinsky has appealed from the order. We conclude that Mr. Kerlinsky has acted improperly and that the discipline ordered by the single justice was appropriate.

The proceedings before the board pertained to allegations that Mr. Kerlinsky violated several bar disciplinary rules in the disposition of settlements negotiated by him on behalf of Joseph E. Calvanese in a personal injury action against Faulkner Hardware Company and W.W. Babcock Company, Inc. The following facts were found by a hearing committee of the board.

Mr. Kerlinsky has practiced law in the Commonwealth since 1952, and since 1972, he has practiced primarily in the area of personal injury litigation. On June 30, 1965, Joseph Calvanese fell from a ladder while at work. Calvanese retained Mr. Kerlinsky to represent him in a workers' compensation action and to pursue remedies for damages from his injuries. On September 16, 1965, Calvanese and Mr. Kerlinsky entered into a written contingent fee agreement using the form set out in S.J.C. General Rule 14, 348 Mass. 806, (1965).[1] The agreement described "[t]he claim, controversy, and other matters with reference to which the services are to be performed" simply as the "accident [of] June 30, 1965." No exceptions were listed under the clause stating that "[t]he client is not liable to pay compensation otherwise than from amounts collected for him by the attorney except as follows." The agreement also called for "[r]easonable compensation . . . to be paid by the client to the attorney, but such compensation (including that of any associated counsel) is not to exceed the following maximum percentages of the gross amount collected:

---

[1]The present rule on contingent fee agreements is contained in S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981). The form suggested in General Rule 14 and the one suggested in rule 3:05 are basically the same.

"25% if settled out of Court

"33 ⅓% if Court action

"[a]nd 20% re: Workmen's Comp." Mr. Kerlinsky and Calvanese did not enter into any subsequent written agreement amending this contingent fee arrangement.

In 1967, Calvanese agreed to a settlement of his workers' compensation claim, and Mr. Kerlinsky received 20% of the settlement as his fee. That same year, Mr. Kerlinsky brought suit against Faulkner Hardware Company, the Massachusetts business which had sold the ladder to Calvanese's employer, and referred the case against Babcock Company (the New York corporation which had manufactured the ladder) to a New York law firm.

In 1975, Mr. Kerlinsky changed New York counsel. In June, 1975, Calvanese signed a document purporting to hire Attorney Sydney Blumberg of Syracuse, New York, to institute legal proceedings against Babcock. Calvanese agreed to pay Mr. Blumberg 50% of any settlement, verdict, or recovery obtained in the Babcock action. Calvanese was the only person who signed the agreement. Mr. Kerlinsky wrote above Calvanese's signature that "⅓ of said fee is to be paid Atty. Louis Kerlinsky."

After reviewing the case file, Mr. Blumberg advised Mr. Kerlinsky to abandon suit in New York and to sue Babcock in Massachusetts. Sometime in 1976, Mr. Kerlinsky's motion was allowed to add Babcock as a party defendant in the pending suit against Faulkner. In April, Mr. Blumberg offered to return the Calvanese file to Mr. Kerlinsky in exchange for payment of 16⅔% of the 50% contingent fee (the 16⅔% later was reduced to 15%). Mr. Kerlinsky consented in writing. Calvanese did not sign that agreement. Mr. Blumberg made no further substantive contributions to the case.

In June, 1978, Faulkner settled with Calvanese for $5,500. Mr. Kerlinsky received one-third of the settlement as his

fee.[2] On June 23, 1978, after trial, a jury found for Babcock. Mr. Kerlinsky pursued an appeal and on November 21, 1980, the Appeals Court reversed the judgment for Babcock and ordered a new trial. See *Calvanese* v. *W.W. Babcock Co.*, 10 Mass. App. Ct. 726 (1980). On July 27, 1981, Babcock and Calvanese, through Mr. Kerlinsky, agreed to settle the case for $22,500, and on August 21, 1981, Mr. Kerlinsky gave Calvanese an accounting of the disbursement of the Babcock settlement funds. Mr. Kerlinsky claimed $11,250, which amounted to 50% of the settlement, as his own fee. In addition, Mr. Kerlinsky withheld $3,375, as Mr. Blumberg's fee (a deduction which Mr. Kerlinsky characterized as an "expense") and several other deductions for expenses relating to different cases that Mr. Kerlinsky was then handling for Calvanese.

Initially, Calvanese accepted a check for $6,035.82. However, he later returned the check and objected both to Mr. Kerlinsky's taking a 50% fee rather than the 33⅓% fee that had been spelled out in the contingent fee agreement and to the deduction of funds to pay expenses in unrelated cases. Although Mr. Kerlinsky testified that Calvanese had agreed orally to pay an additional noncontingent fee for services performed on the appeal, the hearing committee specifically declined to make a finding that the contingent fee agreement had been modified.

In October, 1981, Calvanese hired another attorney to obtain both an accounting from Mr. Kerlinsky and the money Calvanese believed to be his share of the Faulkner and Babcock settlements.

On October 30, 1981, Mr. Kerlinsky opened a savings account entitled, "Louis Kerlinsky P.C. Trustee for Joseph Calvanese," and deposited $11,200.32 into the account. This sum included $6,035.82, which was Calvanese's allocated share of the Babcock settlement, $1,680 for a physician's bill

---

[2] Although Calvanese initially received $3,666.66, as his share of the Faulkner settlement, the hearing committee found that, by September 15, 1978, he had voluntarily turned over that entire amount to Mr. Kerlinsky to pay for expenses in the Babcock trial and three unrelated cases.

and $105 for a medical bill (expenses in the unrelated cases), $3,375 for the 15% fee purportedly due Mr. Blumberg, and accrued interest. Notwithstanding the fact that Calvanese had disputed Mr. Kerlinsky's right to a fee greater than 33⅓% of the recovery, Mr. Kerlinsky retained 50% as his fee.

Despite repeated demands from Calvanese's attorney for an accounting of the $28,000 received in the Faulkner and Babcock settlements, and for payment of the $6,035.82 that Mr. Kerlinsky had allocated as Calvanese's share of the Babcock settlement, Mr. Kerlinsky refused to turn over any of the funds until Calvanese agreed to pay disputed fees in the unrelated cases.

In March, 1983, Calvanese died. His wife, Angelina, was appointed administratrix of her husband's estate. She retained a new attorney to represent her. In 1984, this attorney and Mr. Kerlinsky reached an agreement in which Mr. Kerlinsky paid the Calvanese estate $8,700 in return for a release of all claims against Mr. Kerlinsky. Mr. Kerlinsky took the $8,700 from the funds being held in trust for Calvanese.[3]

Mr. Kerlinsky has never paid Mr. Blumberg or any other bills at issue here. Mr. Blumberg died in January, 1986. His estate has waived any claim to funds from the Babcock settlement. Mr. Kerlinsky acknowledges that Calvanese never agreed to pay Mr. Blumberg a fee over and above the 50% contingent fee called for in the Blumberg fee agreement signed in 1975.

At the time of the hearing, the savings account in trust for Calvanese had over $6,000 in it.

Based on these facts (found in much greater detail by the hearing committee and reviewed by a panel of the board), the board concluded that Mr. Kerlinsky had violated several

---

[3]The administratrix was advised that, notwithstanding the settlement, the board would continue its inquiry into Mr. Kerlinsky's conduct and that the board might order him to turn over additional funds to the estate. A settlement or compromise would neither terminate the investigation of Mr. Kerlinsky nor foreclose any later order by the single justice of this court that directed Mr. Kerlinsky to repay funds. See S.J.C. Rule 4:01, § 10, 365 Mass. 704 (1974).

disciplinary rules contained in S.J.C. Rule 3:07, as appearing in 382 Mass. 768 (1981): Canon 2, DR 2-106 (C) (contingent fee agreements as presently governed by S.J.C. Rule 3:05); Canon 2, DR 2-106 (A) (collection of an illegal or clearly excessive fee); Canon 2, DR 2-107 (A)(1) (full disclosure of a division of fees); Canon 1, DR 1-102 (A)(5) (conduct prejudicial to the administration of justice); Canon 1, DR 1-102 (A)(6) (conduct adversely reflecting on fitness to practice law); Canon 9, DR 9-102 (B)(4) (prompt delivery of funds to a client).[4]

We agree with the single justice's determination that, on the facts found (which have adequate support in the evidence), the violations have been substantially proved. Mr. Kerlinsky has taken a 50% fee in the face of a written contingent fee agreement which limits his fee to 33⅓% of the recovery in the claims pertaining to Calvanese's fall from the ladder. The hearing committee concluded that there was no other valid agreement between Calvanese and Mr. Kerlinsky increasing that maximum fee. Although Mr. Kerlinsky insists that there had been an agreement of modification, the hearing committee acted within the authority conferred on fact finders to disregard his assertion and to conclude that the contingent fee agreement represented the entire understanding of the parties. Further, once Mr. Blumberg ceased to have an interest in the case, it became a Massachusetts matter governed by the contingent fee agreement of September 16, 1965.

The contingent fee agreement cannot be fairly read to support Mr. Kerlinsky's interpretations of any of the essential points. The fact that the agreement contains a blank space where "[t]he contingency upon which compensation is to be paid" is to be identified goes against Mr. Kerlinsky, who drafted the agreement and who thus had the obligation of seeing that all its parts were completed with clarity. See

---

[4]The hearing committee found that Mr. Kerlinsky had not violated DR 9-102 (B)(4). However, on Mr. Kerlinsky's appeal, the panel exercised its authority under S.J.C. Rule 4:01 § 8 (3), as appearing in 382 Mass. 820 (1981), and reversed this conclusion.

S.J.C. Rule 3:05 (5), as appearing in 382 Mass. 762, 763 (1981).[5] On the main issue, the agreement is quite explicit: - The fee to be paid by Calvanese to Mr. Kerlinsky for handling the case is "reasonable compensation," but "such compensation (including that of any associated counsel) is not to exceed the maximum percentage of . . . 33⅓%, if [there is] Court action." In the absence of a valid supplementary agreement for extra compensation in the event that an appeal had to be taken or defended, the 33⅓% cap on compensation in the agreement is to be construed as including payment for the rendition of all legal services, both trial and appellate, necessary to bring the claim to a final conclusion. See *Matter of Laughlin,* 265 F.2d 377, 378 (D.C. Cir. 1959), and cases cited. See also *Pocius* v. *Halvorsen,* 30 Ill. 2d 73, 80 (1964); *Knight* v. *DeMarea,* 670 S.W.2d 59, 62-63 (Mo. Ct. App. 1984); Annot., Construction of Contingent Fee Contract as Regards Compensation for Services After Judgment or on Appeal, 13 A.L.R.3d 673, 677-680 (1985). "The wisdom of the rule [including appellate work in an agreement like the one in issue] is apparent — if the attorney is to be entitled to a contingent fee then it is necessary either to defend a favorable judgment on appeal or to attempt to overturn an unfavorable judgment. In either effort the attorney is doing only that which would be required to achieve a favorable outcome which would assure the right to collect a contingent fee." *Knight* v. *DeMarea, supra* at 63. There is, therefore, a violation of DR 2-106 (A) and (C) in that Mr. Kerlinsky has charged an excessive fee by taking

---

[5]The fact that Mr. Kerlinsky used the form of contingent fee agreement suggested by Supreme Judicial Court rule as an exemplar will not, as he argues, excuse him from the principle that any obscurities in the agreement will be taken against the attorney who drafted it. The statement in rule 3:05 that the use of the suggested form will be "sufficient" is not exculpatory as to Mr. Kerlinsky's duty. It was Mr. Kerlinsky's obligation to indicate the circumstances which would oblige Calvanese to pay compensation in excess of the amount specified as the maximum by the agreement. The problem rests in the language used by Mr. Kerlinsky in this fee agreement, not in any of the language suggested by the rule for a contingent fee agreement.

50% of the Babcock recovery when there was no proper written contingent fee agreement to justify that amount.

The board was warranted in finding that the other violations of the disciplinary rules have been proved.

a. Mr. Kerlinsky kept not only 50% of the Babcock recovery as his fee, but he also retained 15% of the recovery as a fee claimed to be owed to Mr. Blumberg. Thus, in the end, 65% of the total recovery was slated to go to lawyers. Mr. Kerlinsky and Mr. Blumberg negotiated between themselves as to a division of these fees. Although Calvanese had at one time agreed to pay a contingent fee to Mr. Blumberg, he apparently did so on the basis that the suit would be brought in New York. Calvanese did not consent to the division worked out by the two lawyers once Mr. Blumberg returned the case to Mr. Kerlinsky for litigation in Massachusetts.

Mr. Kerlinsky argues that Mr. Blumberg's 15% fee was not a legal fee but simply an "expense." The record is fairly clear, however, that Mr. Blumberg's proposed fee was retained for his participation in the case, which consisted of examining the file and referring the case back to Mr. Kerlinsky. Since Mr. Blumberg was not Mr. Kerlinsky's partner or associate, the agreement to divide fees after the file had been returned from New York to Massachusetts, without full disclosure to and consent by Calvanese, constituted a violation of DR 2-107(A)(1), which pertains to the division of fees among lawyers.

b. Despite demands by the attorney for Calvanese, Mr. Kerlinsky refused to turn over funds which he retained to pay medical bills and Mr. Blumberg. In addition, Mr. Kerlinsky refused to turn over even the undisputed portion of the Babcock recovery which was due to Calvanese. In so doing, Mr. Kerlinsky engaged in conduct which reflected adversely on his fitness to practice law as provided for by DR 1-102 (A)(6).[6]

---

[6]It is not entirely clear how this conduct was prejudicial to the administration of justice in violation of DR 1-102 (A)(5). The allegation was that Mr. Kerlinsky disobeyed the order of the court in the Faulkner case which required him to give $3,666.66 to Calvanese. The hearing committee found

c. It was also determined that Mr. Kerlinsky's conduct in refusing to turn over the undisputed portion of the recovery, despite repeated demands by Calvanese's attorney, was a violation of DR 9-102 (B)(4), which requires a lawyer to deliver promptly to a client property which the client is entitled to receive. On the facts found by the hearing committee, this was a proper conclusion.

What has been said disposes of most of Mr. Kerlinsky's arguments. We will not engage in a point-by-point refutation of his other contentions. Suffice it to say that many of Mr. Kerlinsky's arguments depend on an interpretation of the evidence and the controlling facts that was not accepted by the board.

One contention, however, does deserve comment. Mr. Kerlinsky maintains that this matter should have been dismissed due to laches. The hearing committee found that "the [attorney] has been prejudiced in his defense" by the delay in the proceedings and the deaths of Calvanese and Mr. Blumberg. However, the record contains considerable evidence which corroborates the allegations made by Calvanese prior to his death. While cross-examination of Calvanese and examination of Mr. Blumberg might have been helpful to Mr. Kerlinsky, the inability to interrogate these witnesses was not substantially prejudicial. Not only were Calvanese's allegations corroborated, but Mr. Kerlinsky's own correspondence with Mr. Blumberg verified most of the hearing committee's findings regarding the fees retained by Mr. Kerlinsky. Further, the hearing committee, despite its finding of prejudice, concluded that several violations of the disciplinary rules had not been clearly proved. This indicates that the committee generally resolved in Mr. Kerlinsky's favor questions which might have depended solely on Calvanese's credibility, and that the

as fact, however, that Calvanese voluntarily delivered this $3,666.66 to Mr. Kerlinsky to pay expenses in other actions. The finding that DR 1-102 (A)(5) has been violated may have been an oversight. We pass the issue because more serious charges have been proved, and the absence of a clear-cut violation on this charge will not alter the discipline we conclude ought to be imposed.

committee did not deem the delay sufficient to warrant dismissal of the charges. Finally, Mr. Kerlinsky is not in a good position to rely on an equitable principle such as laches since he has retained funds of the client's which are clearly not his.

There is finally the matter of the discipline to be imposed. The single justice entered the order set forth below.[7] The full court, when reviewing a disciplinary decision of a single justice, inquires whether the order is "markedly disparate" from those ordinarily entered by single justices in similar cases. *Matter of Clooney*, 403 Mass. 654, 658 (1988). Bar counsel has brought to our attention several cases which indicate that the order of the single justice in this case is consistent with orders of other single justices involving generally similar matters. We note that the ABA Standards For Imposing Lawyer Sanctions § 7.3 (1986), recommends a public "reprimand" in cases involving excessive or improper fees. It also appears that mitigating factors were taken into account in calculating the discipline to be imposed.[8]

The fact remains that the client's tort action has remained unresolved as to final recovery more than twenty-four years after Mr. Kerlinsky undertook legal representation. This unfortunate situation has occurred because Mr. Kerlinsky

---

[7]"(1) Louis Kerlinsky shall within ten (10) days pay over to the legal representatives of the Calvanese Estate the funds he was holding as Trustee for Joseph Calvanese at the Bank of New England-West, plus $3,750.00, with interest from August 21, 1981, said interest to be computed pursuant to G. L. c. 221, §51, the latter sum representing the fee charged by the respondent in excess of 33⅓% of the Babcock recovery. (2) Upon verification that said money has been paid, Judgment shall enter publicly censuring Louis Kerlinsky."

[8]These factors include the following: Mr. Kerlinsky did a commendable job in handling the legal aspects of the Babcock case. He has not appropriated the funds in question except the disputed portion of his fee. He has kept the funds in a segregated account. Further, bar counsel initially treated the matter as a fee dispute, closing the file in 1981 and reopening it when allegations were made which raised more serious questions about Mr. Kerlinsky's conduct. The delay in bringing the matter to a hearing resulted in Mr. Kerlinsky's inability to obtain testimony from Mr. Blumberg and to examine Calvanese. While, as has been indicated, the delay does not warrant dismissal, it is a mitigating circumstance to be considered.

clings to the unreasonable position that he should have 50%
of the recovery, notwithstanding the contrary provisions of
the applicable contingent fee agreement drawn by him. This
conduct deserves public rebuke and an order for repayment
accompanied by an assessment of penalty interest as pro-
vided for by G. L. c. 221, § 51 (1988 ed.).

*Order of the single justice affirmed.*