KERI ANN MCNULTY [1] vs. CHARLES MCDOWELL.

Essex. January 4, 1993. - June 3, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ

*Negligence*, Medical malpractice, Foreseeability of harm. *Actionable Tort.*

In an action for medical malpractice, alleging negligence of an obstetrician-gynecologist for failure to test a young woman for immunity to rubella with the result that the plaintiff, her later-conceived child, was born with severe congenital defects, no sufficient physican-patient relationship was established to justify a conclusion that the physician owed a duty of care to the child, in circumstances where the two contacts between the mother and the physician were not in anticipation of pregnancy, but rather to avoid it, and the physician had no reason to expect the future existence of the child. [371-375]

CIVIL ACTION commenced in the Superior Court Department on March 31, 1986.

A motion for summary judgment was heard by *John T. Ronan*, J., and entry of separate and final judgment was ordered by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Elizabeth N. Mulvey* for the plaintiff.

*Carol A. Kelly* for the defendant.

LIACOS, C.J. The plaintiff, Keri Ann McNulty, through her father and next friend, Dennis McNulty, brought this medical malpractice action against the defendant, Charles McDowell, M.D., for injuries related to Keri Ann's congenital rubella syndrome.[2] Keri Ann alleged that McDowell devi-

---

[1] By her father and next friend Dennis McNulty.

[2] Keri Ann also sued two other physicians and two professional associations who rendered care to Keri Ann's mother after she had conceived Keri

ated from accepted medical practice in treating Keri Ann's mother by failing to determine, at two gynecological visits prior to Keri Ann's conception, whether her mother was immune to rubella and, if not, to recommend that she be vaccinated. Keri Ann further averred that McDowell's allegedly negligent treatment of her mother created a foreseeable risk of harm to Keri Ann, for which the defendant is liable.

McDowell moved for summary judgment on the ground that he owed no duty to Keri Ann, since she was not conceived at the time of the alleged negligence. Keri Ann opposed the motion and presented expert testimony that standard medical procedure at the relevant time required McDowell to test for and vaccinate against rubella. This standard practice, Keri Ann argued, imposed a duty on McDowell toward Keri Ann, because vaccinations against rubella are primarily aimed at eliminating risks to later-conceived fetuses.

A judge of the Superior Court granted McDowell's motion for summary judgment, ruling that Keri Ann "was not foreseeably within the scope of the risk of [the] alleged poor practices." We granted Keri Ann's petition for direct appellate review. We now affirm the judge's allowance of McDowell's motion for summary judgment. We conclude that McDowell did not owe a duty to Keri Ann because of the nature of the care sought by Keri Ann's mother. We review the salient facts as to which there is no real dispute and determine the question of law in issue. *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706 (1991).

---

Ann. These claims, as well as claims filed by Dennis McNulty and Donna McNulty against each of the defendants, have been dismissed previously or were part of the defendants' summary judgment motion that was granted. Keri Ann appeals only the claim against McDowell, insofar as it was based on McDowell's treatment of Keri Ann's mother prior to Keri Ann's conception. In this appeal, Keri Ann makes no claim against McDowell for any alleged negligence by McDowell after she was conceived or during the course of her mother's pregnancy.

On June 17, 1975, Donna McNulty (then Donna Guerriero), a twenty-two year old unmarried woman, consulted McDowell, a medical doctor specializing in obstetrics and gynecology. She complained of bloating and pelvic pain prior to menstruation. This was her first visit to McDowell. Previously, a different doctor had implanted in her a contraceptive intrauterine device (IUD). McNulty returned to McDowell on April 27, 1976, with complaints of pain in her sacroiliac area and increased menstrual flow. McDowell suspected that these complaints were related to McNulty's IUD, and he removed it that day. He instructed her to return after her next menstrual cycle, for placement of a different contraceptive device. She did not do so. It is the conduct of McDowell on these two occasions which is the subject of this appeal.

Approximately one year after her second appointment with McDowell, Mrs. McNulty became pregnant. On January 4, 1978, she gave birth to Keri Ann. Keri Ann was born with numerous congenital defects attributable to congenital rubella syndrome, including deafness, blindness, severe mental retardation and heart defects.

Before McDowell can be found liable to Keri Ann for her injuries, Keri Ann must establish that he owed her a duty of care. Whether a duty of care exists is a question of law. *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983). If we determine that McDowell owed Keri Ann no duty of care, then McDowell is entitled to summary judgment. *Doherty* v. *Hellman*, 406 Mass. 330, 333 (1989). See *Dhimos* v. *Cormier*, 400 Mass. 504, 507 (1987).

Whether a physician may owe a duty of care to a child conceived after the physician's treatment of the child's mother is a question of first impression in Massachusetts. It is a different question from the one we considered in *Viccaro* v. *Milunsky*, 406 Mass. 777 (1990). In that case, we held that a child born in an impaired state because of a geneticist's allegedly negligent preconception counseling of his parents did not have a cause of action against the defendant geneticist. *Id.* at 785. In *Vicarro*, the plaintiff child's cause of action was based on an allegation that, absent the defend-

ant's negligence, he would not have been born. *Id.* at 783. An existing child, claiming that he ought not to exist, posed a "fundamental problem of logic," and we joined the majority of jurisdictions that hold that a physician is not liable to a child who was born because of the physician's alleged negligence. *Id.*

This case differs from the circumstances of *Viccaro.* Here, Keri Ann alleges that, if McDowell had not been negligent, she nonetheless would have been born, but in an unimpaired state. We are not constrained by the theoretical difficulties presented by a case like *Viccaro.* Accord *Walker v. Rinck,* 604 N.E.2d 591, 594 (Ind. 1992) (distinguishing "pre-conception" torts from so-called "wrongful life" cases).[3]

McDowell urges this court to adopt a rule that the duty owed by a physician may never extend to those not yet conceived.[4] He relies on *Albala v. City of New York,* 54 N.Y.2d 269 (1981), in which the New York Court of Appeals denied recovery to a child who was born with defects allegedly resulting from damage done to his mother's uterus by the defendants' negligent performance of an abortion four years earlier. The court declined to consider specifically the traditional tort concepts of duty, foreseeability, and causation, and instead created a policy-based rule that no cause of action would lie for negligence allegedly attributable to acts or omissions occurring prior to a plaintiff's conception. *Id.* at 273-275. Most other courts that have considered the question have not been persuaded by the *Albala* court's conclusion that preconception torts should be barred absolutely. See, e.g., *Hegyes v. Unjian Enters., Inc.,* 234 Cal. App. 3d 1103, 1118, 1124-1126 (1991); *Walker v. Rinck,* 604 N.E.2d 591, 595 (Ind. 1992); *Monusko v. Postle,* 175 Mich. App. 269, 275 (1989).

---

[3]We have recognized a cause of action based on injuries sustained by a fetus while in utero. See, e.g., *Payton v. Abbott Labs,* 386 Mass. 540, 560-564 (1982).

[4]McDowell does not argue, and no court has seemed to suggest, that this bright-line "no duty" rule should apply to products liability cases. See *Albala v. City of New York,* 54 N.Y.2d 269, 274 n.* (1981).

We decline to adopt the bright-line rule McDowell proposes. The facts of this case do not require us to address the more generalized question of the viability of preconception torts and we need not do so until the question is placed before us squarely. For the purposes of the present appeal, it is sufficient to note that the conduct alleged by Keri Ann does not establish a physician-patient relationship between the mother and the doctor sufficient to justify imposing a duty of care to Keri Ann on McDowell. While the elements necessary to establish a duty to a later-conceived child are difficult to specify in the abstract, the sparse contacts between Keri Ann's mother and McDowell and the fact that these contacts were made not in anticipation of pregnancy, but rather to avoid it, are insufficient to establish such a duty.

The only other decision we have found imposing a duty to a later-conceived child on a physician for his failure to test the child's mother for rubella, *Monusko* v. *Postle, supra,* turned on the fact that the mother of the later-conceived child had visited the physician for his assistance in conceiving a child. See *id.* at 272. In such a circumstance, a physician's failure to administer tests or procedures designed solely for the benefit of a later-conceived child was held to impose a duty to the child on the treating physician. In *Monusko, supra,* the Michigan Court of Appeals held that a physician owed a duty of care to a not-yet-conceived plaintiff, and that this duty included immunizing the plaintiff's mother against rubella. In finding a duty to the unconceived child the court relied on two factors. First, the court recognized that rubella tests and vaccines are "relatively simple and straight-forward to administer [and] are designed specifically to alleviate the sort of injuries [congenital rubella syndrome in later-conceived children] we have in this case." *Id.* at 275. Secondly, unlike the facts before us, the plaintiff's mother had previously delivered a child with the assistance of

the defendant physician,[5] and had returned to him for removal of a birth control device, *specifically informing him that she intended to become pregnant. Id.* at 272. In these circumstances, the court held that the physician owed a duty of care to the child later conceived. *Id.* at 275. In our view, the physician's knowledge that the mother intended to conceive a child was a critical factor in determining the existence of a duty to that child. See *Hegyes, supra* at 1125-1126 ("As the wrongful conduct [in *Monusko*] occurred while the defendant doctors were treating the mother specifically in preparation for conception and undertaking to render prenatal care, that conduct resulted in a duty owed to the subsequently conceived fetus").[6]

The fact that McDowell was an obstetrician-gynecologist and thus concerned with the health of his patients' reproductive systems does not, in itself, impose an affirmative duty on him to do everything possible to protect the health of a child not yet conceived, planned, or intended. This is especially so when, as in this case, the gynecologist's patient has sought his assistance in *preventing* pregnancy. The mere fact that most women of child-bearing years are, by definition, capable of becoming pregnant, does not impose a duty of care on their physicians running to any later-conceived children. Cf.

---

[5]The plaintiff Monusko also relied on the fact that the standards of the American College of Obstetricians and Gynecologists stated that the rubella-immune status of woman should be investigated at the first postpartum examination, and that the defendants had failed to follow this procedure after the birth of the plaintiff's elder sibling. *Monusko, supra* at 272.

[6]We do not mean to suggest that the only instance in which a physician could owe a duty to a later-conceived child is when the physician is aware that the mother intends to conceive a child. In the context of a physician's alleged failure to test for and vaccinate against rubella, however, where the plaintiff's mother consulted the physician for reasons unrelated to pregnancy, we believe it is the decisive factor.

Although we need not consider whether we would recognize a duty to a later-conceived child in other contexts, we note that cases involving different allegedly wrongful preconception conduct might well yield different results. See, e.g., *Walker* v. *Rinck*, 604 N.E.2d 591 (Ind. 1992) (plaintiff children owed duty by physician who failed to administer Rh immune globulin to Rh-negative mother after birth of Rh-positive first child).

*Monusko, supra* at 272 (mother had indicated intention to become pregnant). Where, as here, the physician has no reason to expect the future existence of the plaintiff (other than the fact that twenty-two year old women sometimes become pregnant), and his alleged negligence consisted of his failure to take affirmative steps to protect this unanticipated child, we conclude that to impose a duty of care to the unconceived child would not be justified.

*Judgment affirmed.*