CARR v WITTINGEN

Docket No. 112966. Submitted December 12, 1989, at Grand Rapids. Decided February 5, 1990. Leave to appeal applied for.

Jerry A. Wittingen, M.D., on May 25, 1985, performed a diagnostic laparoscopy at Butterworth Hospital on Angela Carr, who had complained of pain in the pelvic region. In the course of the laparoscopy, Carr began to hemorrhage. Wittingen performed a laparotomy to stop the bleeding. Wittingen last treated Carr on July 1, 1985. In August, 1985, Carr discovered she was pregnant. On March 21, 1986, thirty-seven weeks into her pregnancy, Carr suffered a placental abruption and uterine rupture, resulting in the death of the fetus. Angela Carr and her husband, Thomas Carr, brought an action on November 25, 1987, in the Kent Circuit Court against Wittingen and Butterworth Hospital. Plaintiffs alleged medical malpractice and Angela Carr, as personal representative of the estate of Kristina Sue Carr, alleged wrongful death. The trial court, Robert A. Benson, J., granted summary disposition in favor of defendants, ruling that plaintiffs could not bring a claim on behalf of the fetus under the wrongful death act, and that their malpractice claims were barred by the applicable statutory periods of limitation. Plaintiffs appealed.

The Court of Appeals *held:*

1. A fetus in utero is a person for purposes of tort law, and an action for wrongful death can be maintained on behalf of the fetus, where the fetus is born alive subsequent to the claimed injury or where the fetus was viable at the time of the alleged injury. Here, where plaintiffs allege that the injury occurred in the course of the laparotomy, a wrongful death action cannot be maintained since the fetus was not born alive

REFERENCES

Am Jur 2d, Death §§ 24, 26-30; Physicians, Surgeons, and Other Healers §§ 319-322; Prenatal Injuries §§ 14-18.

Right to maintain action or to recover damages for death of unborn child. 84 ALR3d 411.

When statute of limitation commences to run against malpractice action against physician, dentist, or similar practitioner. 80 ALR2d 368.

subsequent to the claimed injury nor was the fetus viable at the time of the alleged injury.

2. Plaintiffs' malpractice claims were brought more than two years from the date of last treatment and more than six months from the date they discovered or should have discovered their claim for malpractice. The trial court did not err in ruling that plaintiffs' malpractice claims are barred under the statutory periods of limitation applicable to medical malpractice claims.

3. Plaintiffs' argument that defendants should not be allowed to raise a statute of limitations defense because of fraudulent concealment and equitable estoppel is without merit. Plaintiffs failed to allege any affirmative acts of concealment by defendants nor can plaintiffs claim a fiduciary relationship with defendants such that defendants were under a duty to make disclosures. The Court of Appeals is not persuaded that equitable estoppel should prevent defendants from asserting a statute of limitations defense.

Affirmed.

1. Death — Wrongful Death — Fetus in Utero.

A fetus in utero is a person for purposes of tort law, and an action for wrongful death can be maintained on behalf of the fetus, where the fetus is born alive subsequent to the claimed injury or where the fetus was viable at the time of the alleged injury.

2. Limitation of Actions — Medical Malpractice.

Claims for medical malpractice must be brought within two years after the last treatment by the defendant or within six months after discovery of the malpractice claim (MCL 600.5805[4], 600.5838; MSA 27A.5805[4], 27A.5838).

3. Limitation of Actions — Medical Malpractice — Physicians.

A physician does not resume treating or otherwise serving a former patient, for purposes of the two-year period of limitation for medical malpractice claims, by merely transmitting the patient's records or reports to another physician (MCL 600.5805[4]; MSA 27A.5805[4]).

4. Limitation of Actions — Fraudulent Concealment.

Fraudulent concealment such as will result in the tolling of the running of a statutory period of limitation arises only upon a showing of fraud which is manifested by an affirmative act or misrepresentation except where there is an affirmative duty to disclose by reason that the parties are in a fiduciary relationship.

*John D. Tallman,* for plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for Jerry A. Wittingen, M.D.

*Gruel, Mills, Nims & Pylman* (by *Norman H. Pylman* and *Brion J. Brooks*), for Butterworth Hospital.

Before: DANHOF, C.J., and MAHER and HOOD, JJ.

HOOD, J. Plaintiffs appeal as of right from the November 1, 1988, order of the Kent Circuit Court granting defendants summary disposition. This case arose out of the death of plaintiffs Thomas and Angela Carr's unborn child. Plaintiffs attributed the death to defendants' negligence and filed an action asserting malpractice claims on their behalf and a wrongful death claim on behalf of the fetus. A claim for fraudulent concealment was subsequently added.

In April, 1985, Angela Carr consulted with defendant Dr. Jerry Wittingen regarding pelvic pain. As a result, on May 25, 1985, a diagnostic laparoscopy was performed on Angela by Dr. Wittingen who was assisted by Dr. Hoag at defendant Butterworth Hospital. During the procedure, Angela began to hemorrhage. Consequently, a laparotomy was performed and the bleeding was brought under control.

On June 11, 1985, Angela asked Dr. Wittingen whether she had an increased risk of uterine rupture due to the laparotomy if she became pregnant. Dr. Wittingen replied no. Angela's last treatment with Dr. Wittingen occurred on July 1, 1985.

In August, 1985, Angela discovered she was pregnant. On March 21, 1986, during the thirty-seventh week of pregnancy, Angela suffered a placental abruption and uterine rupture resulting

in the death of the fetus. Plaintiffs contend that the laparotomy was negligently performed resulting in severe tissue damage, blockage of Angela's right fallopian tube, and the eventual death of the fetus.

I

Plaintiffs first argue that the trial court erred in finding that Michigan does not recognize a cause of action for wrongful death on the behalf of a viable fetus.

Plaintiffs attribute the death of the fetus to the laparotomy performed approximately three months prior to Angela's pregnancy. Therefore, the wrongful death claim on behalf of the fetus was for a preconception tort. Under Michigan common law, a fetus in utero is a "person" for purposes of tort law if it was: (1) born alive subsequent to the claimed injury; or (2) viable at the time of the alleged injury. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167, 192; 405 NW2d 88 (1987).

In the instant case, plaintiffs claimed that the injury occurred during the laparotomy. If so, the fetus was not alive subsequent to the laparotomy and was not even in existence at the time the procedure was performed in May, 1985. Under the common law, the fetus would not be deemed a person for purposes of a tort action. Therefore, we are hard put to find that plaintiffs could maintain an action under the wrongful death act on behalf of the fetus.

As further guidance on this issue, we note the Supreme Court's recent reversal in *Fryover v Forbes,* 176 Mich App 36; 439 NW2d 284 (1989) (Weaver, J., dissenting), reversed 433 Mich 877; 446 NW2d 292 (1989). In *Fryover,* a panel of this

Court, relying upon Judge MAHER's dissent in *Toth v Goree*, 65 Mich App 296; 237 NW2d 297 (1975), lv den 396 Mich 836 (1976), held that a nonviable fetus could be considered a person under the wrongful death act and thus the action could be maintained on behalf of the fetus. Judge WEAVER dissented, indicating that only the Legislature should determine whether such a claim exists.

In lieu of granting leave to appeal, our Supreme Court entered an order reversing the majority's decision, stating:

> The Supreme Court does not find any basis in the legislative history or in the case law of this state to conclude that the Legislature intended to create a cause of action for a nonviable fetus not born alive when it enacted and later amended the Wrongful Death Act. The Court agrees with the dissent in the Court of Appeals that any decision to extend liability under the Wrongful Death Act is one more appropriately left to the Legislature. [433 Mich 877.]

While the *Fryover* case did not involve a preconception tort, we find the Supreme Court's reversal both helpful and persuasive and leave extension of liability under the wrongful death act to actions on behalf of beings *not in existence at the time of the injury* to the purview of the Legislature. The trial court properly granted defendants summary disposition as to plaintiffs' wrongful death claim.

II

Plaintiffs next assert that the trial court erred in finding that their malpractice claims were barred by statute of limitations.

Under the applicable statute of limitations, plaintiffs had to assert their malpractice claims

within (1) two years of the date of Angela's last treatment with Dr. Wittingen, MCL 600.5805(4); MSA 27A.5805(4); or (2) six months of the date on which the claim was or should have been discovered, MCL 600.5838; MSA 27A.5838.

Plaintiffs admit that Dr. Wittingen's final official treatment was on July 1, 1985. However, plaintiffs contend that we should find that Dr. Wittingen continued to treat Angela as late as March 31, 1986, when he transferred records to her new physician. We disagree.

A physician does not resume treating or otherwise serving a patient by the mere transmittal of records or reports to another physician. *Antal v Porretta,* 165 Mich App 238, 241; 418 NW2d 395 (1987). Since plaintiffs did not file their complaint until November 25, 1987, approximately twenty-nine months after the last treatment with Dr. Wittingen, plaintiffs' medical malpractice claim was not filed within the two-year limit required by MCL 600.5805(4); MSA 27A.5805(4).

Plaintiffs also failed to meet the six-month limitation period of MCL 600.5838; MSA 27A.5838. It is clear that plaintiffs realized by March 31, 1986, that they had a possible malpractice action against Dr. Wittingen because plaintiffs sought to arbitrate their claims with Butterworth Hospital where Dr. Wittingen performed the laparotomy. Consequently, plaintiffs filed their complaint more than six months from the latest possible date they discovered or should have discovered a claim.

With respect to defendant Butterworth Hospital, Angela's last treatment was on May 28, 1985. This represents the date Angela was released from Butterworth following the laparotomy. The additional x-rays taken in May, 1987, constituted new treatment unrelated to the laparotomy which gave rise to plaintiffs' malpractice action. Thus, plain-

tiffs' claims against Butterworth Hospital were filed more than two years after Angela's final treatment date. MCL 600.5805(4); MSA 27A.5805(4).

Furthermore, as previously indicated, plaintiffs attempted to arbitrate their claims on March 31, 1986. We believe that plaintiffs discovered or should have discovered a possible action against the hospital on this date and their compliant was filed more than six months later. MCL 600.5838; MSA 27A.5838.

III

Plaintiffs' final argument is that defendants were "estopped" from asserting the statute of limitations as a defense because of fraudulent concealment and equitable estoppel. First, fraudulent concealment is a doctrine that can be utilized to toll a limitation period. See MCL 600.5855; MSA 27A.5855. In the instant case, we do not believe that the doctrine is applicable to plaintiffs' case because no fiduciary relationship existed between the parties such that there was a duty to make disclosures, and plaintiffs failed to allege any affirmative acts by defendants. See *Draws v Levin,* 332 Mich 447, 452; 52 NW2d 180 (1952); *Lumber Village, Inc v Siegler,* 135 Mich App 685, 694-695; 355 NW2d 654 (1984). Second, we are not persuaded that equitable estoppel prevented defendants from asserting the statute of limitations as a defense. *Id.,* pp 697-699.

IV

In light of the above conclusions, we affirm the trial court's order granting summary disposition to defendants.

Affirmed.