MARTIN v ST JOHN HOSPITAL AND MEDICAL CENTER
CORPORATION

Docket No. 144837. Submitted December 15, 1993, at Detroit. Decided
June 6, 1994, at 9:50 A.M. Leave to appeal sought.

Deanna Martin, individually and as personal representative of
the estate of Nichole Martin, deceased, and Jeffrey S. Martin
brought a wrongful death action in the Wayne Circuit Court
against St. John Hospital and Medical Center Corporation. The
plaintiffs alleged that the defendant breached its duty of care
to Nichole Martin in negligently performing a Caesarean sec-
tion when Deanna Martin gave birth to a child in 1987. When
Deanna Martin became pregnant again, the child, Nichole
Martin, was stillborn as a result of the rupture of Deanna's
uterus where the Caesarean incision had been made. Nichole
was viable at the time of her death. The court, Charles Kauf-
man, J., denied the defendant's motion for partial summary
disposition. The defendant appealed by leave granted.

The Court of Appeals held:

1. The parents of a fetus, viable before death, may maintain
a wrongful death action based on surgical procedures per-
formed on the mother's reproductive organs before conception
of the fetus.

2. Parents may recover for the death of a viable fetus where
an alleged breach of care in performing a surgical procedure on
the mother before conception of the fetus involves the failure to
adhere to a standard of care that contemplates future pregnan-
cies and considers the effect the procedure may have on such
pregnancies. Liability exists to viable fetuses who are subse-
quently injured because of services provided to the mother.

Affirmed and remanded.

TORTS — WRONGFUL DEATH — PRECONCEPTION NEGLIGENT ACTS.
The parents of a fetus, viable before death, may maintain a

---

REFERENCES
Am Jur 2d, Death §§ 235, 236.
Right to maintain action or to recover damages for death of unborn
child. 84 ALR3d 411.
Recovery of damages for grief or mental anguish resulting from
death of child—modern cases. 45 ALR4th 234.

wrongful death action based on surgical procedures performed on the mother's reproductive organs before conception of the fetus.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita* and *Michelle J. Harrison*), for the plaintiffs.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*) and *Julia C. Kelly*), for the defendant.

Before: Marilyn Kelly, P.J., and White and D. F. Breck,* JJ.

Marilyn Kelly, P.J. Defendant appeals by leave granted from an order of Wayne County Circuit Judge Charles Kaufman denying its motion for partial summary disposition in this wrongful death action. We affirm.

I

In 1987 Deanna Martin gave birth to a child by caesarean section at defendant St. John Hospital. In 1988, she again became pregnant. At about thirty-seven weeks' gestation, she was admitted to a different hospital complaining of abdominal pain. Following a period of monitoring, her physician performed an emergency caesarean section. Her physician determined that her uterus had ruptured where the earlier caesarean incision had been made. The fetus, Nichole Martin, was stillborn as a result of the rupture. There is no dispute that she was viable at the time of her death.

Plaintiffs brought a wrongful death action against defendant. MCL 600.2922; MSA 27A.2922. They alleged that defendant breached its duty of

* Circuit judge, sitting on the Court of Appeals by assignment.

care to Nichole Martin in negligently performing the earlier caesarean delivery. As a result, defendant created a substantial risk of uterine rupture and fetal death in any future pregnancy of Deanna Martin. Ms. Martin also alleged breach of defendant's duty of care to her, and her husband claimed loss of consortium.

The trial court denied defendant's motion for partial summary disposition on the wrongful death claim and reached the same result following rehearing on the issue. Defendant sought an interlocutory appeal.

II

The issue is whether the parents of a fetus, viable before death, can maintain a wrongful death action based on surgical procedures performed on the mother's reproductive organs before conception. Strictly speaking, it is not a matter of first impression in Michigan. However, the law concerning it is not fully settled.

A

Under Michigan common law, a negligence action for prenatal injury may be maintained on behalf of a fetus if it is subsequently born alive. *Womack v Buchhorn,* 384 Mich 718, 725; 187 NW2d 218 (1971). A negligence action may also be maintained if the fetus was viable at the time of the injury. *O'Neill v Morse,* 385 Mich 130; 188 NW2d 785 (1971). Viability refers to the fetus's capacity to live outside the mother's womb, even if artificial assistance is required. *Toth v Goree,* 65 Mich App 296, 299, n 3; 237 NW2d 297 (1975).

Three recent Michigan cases have grappled with whether negligent acts, prenatal or preconception,

causing injury to a viable fetus create a legitimate cause of action on behalf of the fetus.

In the first, thirty-seven weeks into a pregnancy, the plaintiff's uterus ruptured resulting in the death of an otherwise viable fetus. The plaintiff brought suit for the wrongful death. She alleged that the defendant doctor negligently performed a laparotomy on her three months before she conceived, which resulted in severe tissue damage and the eventual death of the fetus. *Carr v Wittingen,* 182 Mich App 275; 451 NW2d 584 (1990), rev'd in part and lv den in relevant part 435 Mich 856 (1990). The plaintiffs claimed that the injury occurred at the time of the laparotomy, before conception. We affirmed the trial court's grant of summary disposition to the defendant physician. We concluded that it is for the Legislature to extend liability under the wrongful death act to and for beings not in existence at the time of the injury. *Id.,* p 279.

The second case involved the death of an eight-month viable fetus. Its father brought a wrongful death action alleging that the defendant hospital, his wife's employer, was liable for improperly treating her following her work-related exposure to hepatitis. The mother had been pregnant for three-and-a-half months when the exposure occurred. She contracted hepatitis when she was eight months' pregnant and delivered a stillborn fetus. *Jarvis v Providence Hosp,* 178 Mich App 586; 444 NW2d 236 (1989). The fetus had not been viable when the wife was initially exposed to the hepatitis but was viable at the time she contracted the disease.

The Court held that a wrongful death action could be maintained. *Id.,* p 590. It concluded that, although clearly not viable when defendant's negligent conduct occurred, the fetus was actually

injured by the negligence when eight months' gestational age. Since the eight month fetus was viable when injured, plaintiff stated a cause of action. *Id.,* p 591. Also, the Court appears to have concluded that injury to the fetus was foreseeable and that the defendant had a duty not to create an unreasonable risk of harm. *Id.,* p 595.

In the third case, the plaintiffs alleged that the defendants negligently failed to administer a test and immunization to the plaintiff-wife before her pregnancy. The procedure was specifically designed to prevent rubella syndrome. As a result of defendants' negligence, their child was born with the syndrome. *Monusko v Postle,* 175 Mich App 269; 437 NW2d 367 (1989). The Court held that the defendants owed a duty to the child, even though she had not been conceived at the time of the alleged wrongful act. *Id.,* p 276.

In reaching its decision, the Court emphasized the direct connection between the test, the immunization procedure designed to protect subsequently conceived children and the harm which resulted to the plaintiff. The court also noted that the test and the preconception immunization had been specifically designed to prevent rubella syndrome in children not yet conceived. The Court thereby distinguished the case on its facts from the decision in *Malik v William Beaumont Hosp,* 168 Mich App 159; 423 NW2d 920 (1988). *Monusko,* p 277.

**B**

Although *Carr* appears superficially to be most similar to the instant case, we find it distinguishable. First, plaintiffs here allege that the type of incision made during the mother's first caesarean delivery was well known to carry an increased risk

of uterine rupture in later pregnancies. It appears that the plaintiffs in *Carr* did not make similar allegations. Second, the Court in *Carr* had no alternative but to reach the decision it did, because the plaintiffs there alleged that the injury occurred at the time of the laparotomy. In contrast, here plaintiffs argue persuasively that, while the mother's injury occurred at the first delivery, the injury to the fetus occurred when the mother's uterus ruptured. The fetus was viable at the time of the injury.

C

On the question of when the injury to the fetus occurred, we find compelling an analogy offered by our colleagues in Missouri:

> The reason for not adopting a rule that would absolutely bar claims for preconception torts is demonstrated by the following hypothetical: Assume a balcony is negligently constructed. Two years later, a mother and her one-year-old child step onto the balcony and it gives way, causing serious injury to both the mother and the child. It would be ludicrous to suggest that only the mother would have a cause of action against the builder but, because the infant was not conceived at the time of the negligent conduct, no duty of care existed toward the child. [*Lough v Rolla Women's Clinic, Inc,* 866 SW2d 851, 854 (Mo, 1993).]

If we consider the uterus a vessel which, in this case, was repaired by the physicians who delivered plaintiffs' first child, this analogy seems quite apt, as do others. For example, assume a party had his furnace repaired and the work was defective so that the next heating season fumes are released killing a newborn child. We would conclude that the injury occurred when the fumes were released,

not when the furnace was repaired. Nor would the infant be denied a cause of action because it was not in existence at the time of the negligent repair.

In the case before us, physicians repaired the mother's uterus. At that time, they injured the mother. However, the fetus was uninjured until the moment when the uterus, no longer able to sustain the pregnancy, ruptured. As in the balcony hypothetical, it makes little sense to bar a cause of action because the injured party was not yet conceived when the negligent conduct occurred.

### D

We reject, as well, defendant's argument that it owed no duty to any fetus conceived after the first caesarean section. Such a broad denial of duty has been criticized and rejected elsewhere. The Supreme Court of Indiana has observed that the duty of a physician to a patient is determined by balancing (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) the public policy concerns. *Walker v Rinck,* 604 NE2d 591, 594 (Ind, 1992). The Court there observed that

"a duty may be owed to a beneficiary of the consensual relationship, akin to that of a third-party beneficiary of a contract, where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons." [*Id.,* pp 594-595, quoting *Webb v Jarvis,* 575 NE2d 992, 996 (Ind, 1991).]

Here a physician, holding himself out as a specialist in gynecology and obstetrics, performed on a

patient's reproductive organs a direct surgical procedure allegedly well known to endanger future pregnancies.

Defendant argues that imposing a duty of due care regarding a fetus conceived after medical treatment to the mother would create a conflict of interest. Defendant alleges that the conflict between the mother and the later-conceived fetus would hamper the physician's ability to treat the mother. However, defendant does not assert that here the interests of the mother, and of the child delivered by caesarean section, were adverse to the interests of the later-conceived fetus; defendant does not assert that the procedure that would have avoided the subsequent uterine rupture would not have been proper medical care for the mother and first child. This case does not involve competing interests between mother and fetus. Rather, the question is whether the parents can recover for the death of the viable fetus under circumstances where the alleged breach of care in performing the procedure on the mother involves the failure to adhere to a standard of care which contemplates future pregnancies and considers the effect the procedure may have on such pregnancies.

We are persuaded that liability exists to viable fetuses who are subsequently injured because of services provided to the mother. The Court in *Monusko* emphasized the direct connection between the test, the immunization procedure and the harm which occurred. We note a similar close relationship between the events which occurred here.

We also find ourselves in agreement with a number of observations made by the Supreme Court of Indiana in *Walker,* p 597. The Indiana Supreme Court, quoting *Yeager v Bloomington*

*Obstetrics*,[1] noted " 'that a blanket no-duty rule disallowing all claims based upon alleged pre-conception torts is unnecessary, unjust, and contrary to fundamental and traditional principles of Indiana tort law.' " *Walker,* p 597. The Court also observed that the decision to permit parties to bring such causes in appropriate circumstances has not resulted in a flood of such cases. Similarly we are persuaded that no floodgates will be opened by our opinion here.

We affirm the trial court's decision to deny defendant's motion for summary disposition. We remand for further proceedings consistent with this opinion and do not retain jurisdiction.

---

[1] *Yeager v Bloomington Obstetrics & Gynecology, Inc,* 585 NE2d 696, 700 (Ind App, 1992), aff'd 604 NE2d 598 (Ind, 1992).