Jodene M. SANTANA and Michael Santana, et ux., Plaintiffs,

v.

ZILOG, INC., a California corporation, and John Does 1 through 5, Defendants.

No. CIV 94–087 S MHW.

United States District Court, D. Idaho.

Feb. 23, 1995.

David R. Lombardi, Julie Klein Fischer, Givens Pursley & Huntley, Boise, ID, for plaintiff.

Gerald T. Husch, Steven R. Thomas, Patricia M. Olsson, Moffatt, Thomas, Barrett, Rock & Fields, Boise, ID, for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAMS, United States Magistrate Judge.

Plaintiffs bring this diversity action for wrongful death, alleging that chemicals used in the manufacturing process at Defendants' computer chip facility caused Defendants' employee, Plaintiff Jodene Santana, to miscarry on six separate occasions. Defendants have filed two motions to dismiss under Rule 12(b)(6) Federal Rules of Civil Procedure. Defendant's first Motion to Dismiss is on the grounds that Idaho's wrongful death statute, Idaho Code § 5–311 does not recognize a cause of action for the wrongful death of a non-viable fetus. Defendants' Second Motion to Dismiss is made on the grounds that,

assuming the existence of such a cause of action, Idaho's worker's compensation scheme preempts any tort claim for wrongful death in this instance.

Plaintiffs have responded to both motions and have asked for certification of these issues to the Idaho Supreme Court. For the reasons set forth below, I hold (1) that certification to the Idaho Supreme Court is inappropriate; (2) that under Idaho Code § 5–311 viability marks the beginning of legal personhood and the corresponding right to assert a cause of action for the wrongful death of an unborn fetus is limited to cases involving the death of a viable fetus; and (3) that determination of the preemptive effect of Idaho's workers compensation scheme is not necessary to resolve this case. Accordingly, Defendants' First Motion to Dismiss is GRANTED.

## I

## BACKGROUND

Plaintiffs Jodene M. Santana and Michael Santana ("Santanas") are husband and wife and were, at all times relevant to the events at issue, residents of Canyon County, Idaho. Defendant Zilog Inc. ("Zilog") is a California corporation engaged in the manufacture of computer chip components with its principal place of business in Nampa, Idaho. Defendants John Does 1 through 5 are persons, corporations, or other entities who provided materials, information, or other services to Zilog.

Jodene Santana has been employed by Zilog, Inc., since August 19, 1988. She has generally been assigned to work in the area commonly referred to as the "fab." Jodene Santana alleges that while working in the fab, she was exposed to chemicals which had an adverse effect on her reproductive health. She further alleges that Zilog knew or should have known of the dangerous nature of these chemicals.

During the time she was employed by Zilog, Jodene Santana had the severe misfortune to suffer six miscarriages. She became pregnant in December of 1988 and miscarried in February 1989 when the fetus was approximately seventeen-weeks old.[1] In September of 1989 she again became pregnant and this fetus was lost in November of 1989.

The next pregnancy occurred in January 1991. Jodene Santana alleges that she asked her supervisor to be assigned to a different area where she would not be exposed to chemicals which she believed were preventing her from coming to full term. Jodene Santana alleges that she was advised by her supervisor that the chemicals in use in the fab presented no risk of harm to her or the unborn fetus, and that she could take a leave of absence upon the request of her physician. In February of 1991, Jodene Santana miscarried for the third time.

Jodene Santana became pregnant a fourth time in May of 1991 and, upon learning that she was pregnant, obtained a request from her physician that she be allowed to take a leave of absence, which was granted. In June of 1991 Jodene Santana experienced another miscarriage. She became pregnant a fifth time in November of 1991. Again she was granted a leave of absence at the request of her physician. She lost this fetus in January of 1992 when it was approximately fourteen to fifteen weeks old.

In February 1993, Jodene Santana became pregnant a sixth time. In March of 1993, Jodene Santana suffered another miscarriage after approximately eight weeks of gestation. It is undisputed that the longest period of gestation for any of the pregnancies that ended in a miscarriage was seventeen weeks.

On January 19, 1994, Plaintiffs filed a Complaint in the District Court of the Third Judicial District of the State of Idaho. This Complaint brought the following state law causes of action against the Defendants for personal injury and wrongful death, specifi-

---

**1.** A fetus is medically defined as any unborn offspring in the postembryonic period, in humans the child in the utero from the seven to eight weeks after fertilization until birth. Due to some of the short periods of gestation presented

by the facts of this case, some of the pregnancies may not have reached the "fetus" stage of development and are more accurately characterized as postembryonic. *Dorland's Illustrated Medical Dictionary* (26th ed. 1985).

cally alleging: (1) Count One for negligence; (2) Count Two for failure to warn; and (3) Count Three for battery. Plaintiffs ask for compensatory damages for the payment of medical expenses for the death of Plaintiffs' fetuses and the loss of their aid, comfort, and society and support, and for Plaintiffs' costs and reasonable attorney fees. On March 1, 1994, the case was removed to Federal Court. 28 U.S.C. § 1332.

## II

## DISCUSSION AND ANALYSIS

### A.

### Certification to the Idaho Supreme Court is Not Appropriate

■ The Santanas urge the Court to certify this case to the Idaho Supreme Court for a declaratory ruling on the legal issues raised in Zilog's two motions to dismiss.[2] Because this is a diversity action, the *Erie* doctrine requires this Court to apply Idaho law to resolve any questions of substantive law presented by the Motions to Dismiss. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, an authoritative holding from the Idaho Supreme Court would settle the questions of whether viability is a prerequisite to filing suit for the wrongful death of a fetus and whether such a wrongful death action is preempted by worker's compensation under these circumstances. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

■ No Idaho Court has squarely considered the issues presently before the Court; however, this Court is not without related Idaho Supreme Court authority which gives guidance on how the Idaho Supreme Court would decide these questions.

*Burns v. International Ins. Co.,* 929 F.2d 1422 (9th Cir.1991). *Accord Hon v. Stroh Brewery Co.,* 835 F.2d 510, 512 (3rd Cir. 1987); *Wilson v. Asten–Hill Mfg. Co.,* 791 F.2d 30 (3rd Cir.1986). In addition, in prognosticating how the highest court in a state would decide a particular issue, a federal court may "look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Burns,* 929 F.2d at 1424. *Accord McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3rd Cir.1980), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). Despite the Santanas' arguments to the contrary, ample indications exist as to how the Idaho Supreme Court would resolve these issues. Because of the well developed law in this area throughout the United States, I am convinced that certification to the Idaho Supreme Court is unnecessary and would only serve to delay a decision in this action.

### B.

### Standard for a Motion to Dismiss

■ Defendants have moved for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure which allows for a court to dismiss a complaint, prior to the filing of an answer, if it finds that the complaint fails to state a cause of action upon which relief can be granted. When the court is testing the sufficiency of the claims for relief, the complaint should be construed in a light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Church of Scientology v. Flynn,* 744 F.2d 694, 696 (9th Cir.1984). The complaint need not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of

---

**2.** Rule 12.1(a) of the Idaho Appellate Rules provides that:

The Supreme Court of the United States, a Court of Appeals of the United States or a United States District Court *may* certify in writing to the Idaho Supreme Court a question of law asking for a declaratory judgment or decree adjudicating the Idaho law on such question if such court ... finds in a pending action that:

(1) The question of law certified is a controlling question of law in the pending action in the United States court as to which there is no controlling precedent in the decisions of the Idaho Supreme Court, and
(2) An immediate determination of the Idaho law with regard to the certified question would materially advance the orderly resolution of the litigation before the United States court. Idaho App. Rule 12.1(a).

facts in support of the claim which would entitle plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Reddy v. Litton Indus.,* 912 F.2d 291, 293 (9th Cir.1990), *cert. denied,* 502 U.S. 921, 112 S.Ct. 332, 116 L.Ed.2d 272 (U.S.1991); *York v. Story,* 324 F.2d 450 (9th Cir.1963), *cert. denied,* 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). The issue is not whether the plaintiff will ultimately prevail or is likely to prevail, but whether the plaintiff is entitled to offer evidence to support the claim. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## C.

### Idaho Law Requires that a Fetus be Viable Before a Cause of Action for Wrongful Death May Arise

■ The Complaint does not allege that the fetuses in question were viable at the time of each of the miscarriages. In their response to the First Motion to Dismiss, the Plaintiffs have not argued that a factual dispute would exist as to whether the fetuses were viable since seventeen weeks was the longest pregnancy. The position of the parties on this point is in accordance with well established law.

The most recent United States Supreme Court decision in this area is *Planned Parenthood v. Casey,* —— U.S. ——, ——, 112 S.Ct. 2791, 2817, 120 L.Ed.2d 674 (1992) (opinion of O'Connor, Kennedy, and Souter, JJ) (The point at which "there is a reasonable possibility of maintaining and nourishing a life outside the womb" is the point at which an unborn fetus becomes viable.); *Roe v. Wade,* 410 U.S. 113, 160, 93 S.Ct. 705, 730, 35 L.Ed.2d 147 (1973) (Viability is the point at which the fetus is potentially able to live outside the mother's womb, albeit with artificial aid); *Webster v. Reproductive Health Services,* 492 U.S. 490, 554, 109 S.Ct. 3040, 3076 n. 9, 106 L.Ed.2d 410 (1989) (fetal viability no earlier than 23–24 weeks). *Accord Ferguson v. District of Columbia,* 629 A.2d 15 (D.C.1993) (Earliest point at which a fetus can survive is 23–25 weeks.); *McCaskill v. Philadelphia Housing Authority,* 419 Pa.Super. 313, 615 A.2d 382 (1992) (As a matter of law, seventeen-week-old fetus was non-viable at the time of miscarriage).

While no Idaho appellate decision has expressly delineated the week of gestation at which viability is determined to exist, substantial guidance is available from the Idaho Supreme Court's decision in *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982). The Idaho Supreme Court adopted without comment the finding of the trial court that a viable fetus was one capable of sustaining life independent of the mother. There is no indication in *Volk* that Idaho courts would not accept the same gestation period found by the United States Supreme Court to constitute legal viability, 23–24 weeks, and in fact, the *Volk* Court cited to the *Roe v. Wade* decision.

The record in this case establishes that the longest period of gestation was seventeen weeks before Jodene Santana experienced a miscarriage—not a long enough period for any of her fetuses to be considered viable. With this in mind the Court will turn to the central issue, whether the non-viability of Jodene Santana's unborn fetuses at the time of their miscarriage precludes her from filing a wrongful death suit.

Although the *Volk* case involved the death of a viable fetus, I have determined that the Idaho Supreme Court's reasoning in that case provides some insight into whether the Idaho Supreme Court would consider a non-viable fetus "a person" within the meaning of Idaho Code § 5–311.

In *Volk,* the plaintiff, while pregnant, was injured in an automobile wreck approximately two weeks before she was due to give birth. *Id.* at 571, 651 P.2d at 12. Plaintiff alleged that the unborn fetus died within minutes of the accident and was stillborn approximately eleven hours later. The district court granted summary judgment against the plaintiffs, holding that no wrongful death action accrued on behalf of a viable, unborn fetus because it was neither a person nor a minor child within the meaning of the relevant Idaho statutes.[3] The Idaho Su-

---

**3.** In 1982 at the time of *Volk,* Idaho Code §§ 5– 310 and 5–311 provided in pertinent part:

preme Court reversed, holding that such an action would lie.

The *Volk* court first looked to the "modern trend and the clear weight of authority," citing *Roe v. Wade* and the *Restatement (Second) of Torts* for the proposition that "a cause of action will lie on behalf of a viable fetus who sustains prenatal injuries, *but* is subsequently born alive." *Volk*, 103 Idaho at 571, 651 P.2d at 12. With this proposition firmly in hand, the *Volk* court next focused on whether a fetus must be subsequently born alive before a cause of action arises.

The *Volk* Court looked to Idaho Code § 32–102 which states that "[a] child conceived, but not yet born, is to be deemed an existing person so far as may be necessary for its interests, in the event of its subsequent birth." The *Volk* court found this statute was distinct and separate from Sections 5–310 and 5–311 because of its location in the "Domestic Relations" section of the Idaho Code. Accordingly, the *Volk* court rejected defendant's argument that Section 32–102 implied that a fetus must be born alive under Section 5–310 or 5–311 to have a cause of action for wrongful death. *Volk*, 103 Idaho at 574, 651 P.2d at 15.

The Idaho Supreme Court then reviewed Idaho Code § 5–310 which allowed parents to maintain an action for the injury or death of an unmarried minor child, and Section 5–311 which provided that heirs may maintain an action for the death of a person, and determined that neither of these statutes precluded the parents of a viable fetus who failed to be subsequently born alive from bringing suit

Idaho Code § 5–310. Action for injury *or death* of unmarried child.—The parents may maintain an action for the injury *or death* of an unmarried minor child, and for the injury *or death* or a minor child who was married at the time of his *death* and whose spouse died as a result of the same occurrence and who leaves no issue, and a guardian for the injury *or death* of his ward when such injury *or death* is caused by the wrongful act or neglect of another, but if either the father or mother be dead or has abandoned his or her family, the other is entitled to sue alone. Such action may be maintained against the person causing the injury *or death*, or if such person be employed by another person, who is responsible for his conduct, also against such other person.

for wrongful death. Specifically the Court reasoned:

> It is clear that Idaho Code §§ 5–310 and 5–311 were enacted to alleviate the harsh rule of common law that while a tortfeasor could be held liable for injuring his victim, he was immune from liability if he killed his victim. The actions authorized by that legislation served two purposes or policies, the first of which is to provide damages to those parties authorized to bring wrongful death actions, and the second of which is to deter wrongful conduct through the imposition of civil liability.

*Volk*, 103 Idaho at 574, 651 P.2d at 15. Furthermore, in stating its holding, the Idaho Supreme Court also took note of the majority view:

> While clearly not binding on this Court, we note that at least twenty-seven jurisdictions have held that an action for wrongful death of a *viable* fetus may be maintained, although the fetus was not living when born.... We are constrained to agree with the reasoning of what appears to be the majority rule and thus reject live birth as the point of demarcation of the beginning of legal personality.

*Id.* (emphasis added).

However, the *Volk* Court carefully limited its holding, stating that:

> We reach no conclusion, however, as to whether recovery in a wrongful death action can be predicated upon the injury and death of a *non-viable* fetus.

*Id.* at 574, 651 P.2d at 15 (emphasis added).

Notwithstanding its failure to clearly delineate the point personhood begins under Sec-

5–311. Action for wrongful death.—When the death of a person, not being a person provided for in section 5–310, Idaho Code, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just. Idaho Code §§ 5–310, 5–311 (1982) (emphasis added). The two sections were amended in 1984 to by removing all references to death in § 5–310, and removing the reference to § 5–310 contained in § 5–311.

tions 5–310 and 5–311, the *Volk* Court clearly indicated that legal personhood under these statutes predates birth. Nonetheless, because the unborn fetuses in the present case were nonviable at the time of death, unlike the baby in *Volk,* this Court must go further than the *Volk* court and determine exactly when a fetus becomes a "person" for purposes of Section 5–311. As acknowledged in *Volk,* the starting point for determining the parameters of a wrongful death action for the death of an unborn fetus is Idaho's wrongful death statute. Therefore, the Court will now inquire as to whether an unborn fetus has developed to the point to be considered a "person" intended to be covered by the Idaho's wrongful death statute. *Prosser and Keeton on Torts,* § 55, at 369 (5th ed. 1984). *Accord Restatement (Second) of Torts* § 869(2) ("If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides.").

The Idaho statutes that changed the common law to provide for a wrongful death cause of action do not give any express guidance as to whether an unborn fetus must be viable before a cause of action accrues. Idaho Code § 5–311 provides, in pertinent part:

When the death of a *person* is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured.

Idaho Code § 5–311 (emphasis added). A vast majority of jurisdictions that have con-

sidered this issue have refused to recognize a cause of action for wrongful death of a nonviable fetus. The Supreme Court of Pennsylvania recently conducted a comprehensive survey of the various jurisdictions in *Coveleski v. Bubnis,* 535 Pa. 166, 634 A.2d 608 (1993), stating:

[E]very other jurisdiction that has faced this issue has rejected an action for wrongful death for the demise of a fetus prior to viability. *See, e.g., Akl v. Listwa,* 741 F.Supp. 555 (E.D.Pa.1990) (predicting Pennsylvania would not recognize a cause of action for the death of an eight-week-old fetus); *[Estate of] Baby Foy v. Morningstar Beach Resort, Inc.,* 635 F.Supp. 741 (D.V.I.1986) (16–18 week fetus is not a person within the meaning of the wrongful death act); *Mace v. Jung,* 210 F.Supp. 706 (D. Alaska 1962) (same); *Gentry v. Gilmore,* 613 So.2d 1241 (Ala.1993) (no cause of action for 13–week fetus); *Green v. Smith,* 71 Ill.2d 501, 17 Ill.Dec. 847, 377 N.E.2d 37 (1978) (no cause of action for 14–18 week old fetus); *Fryover v. Forbes,* 433 Mich. 878, 446 N.W.2d 292 (1989) (no cause of action for death of 16 week fetus); ... [4]; *Wallace v. Wallace,* 120 N.H. 675, 421 A.2d 134 (1980) (same); *Miccolis v. AMICA Mut. Ins. Co.,* 587 A.2d 67 (R.I. 1991) (no cause of action for death of five week fetus); *West v. McCoy,* 233 S.C. 369, 105 S.E.2d 88 (1958) (same).

We too reject a cause of action for wrongful death on behalf of a non-viable fetus, and like other jurisdictions, we will defer to our legislature for any substantial expansion of the scope of liability.

*Coveleski,* 634 A.2d at 609.[5] It is, therefore, the overwhelming majority view in the Unit-

---

**4.** At the time *Coveleski* was decided, the Montana Supreme Court in *Kuhnke v. Fisher,* 210 Mont. 114, 683 P.2d 916 (1984), had refused to recognize a cause of action for a child that was not subsequently born alive. Accordingly, the *Coveleski* court cited *Kuhnke* as a jurisdiction following the majority view which would not recognize a cause of action for the wrongful death of a nonviable unborn child. However, after *Coveleski* was decided, the Montana Supreme Court recognized a cause of action for wrongful death of a viable fetus. *Strzelczyk v. Jett,* 264 Mont. 153, 870 P.2d 730 (1994). Montana law now corresponds to Idaho law, recognizing that neither the Montana Supreme Court or the Idaho Supreme

Court have expressly ruled on whether a cause of action exists for the wrongful death of a non-viable fetus.

**5.** See also the following cases refusing to recognize a cause of action for wrongful death of a non-viable fetus: *Ferguson v. District of Columbia,* 629 A.2d 15 (D.C.1993); *Egan v. Smith,* 87 Ohio App.3d 763, 622 N.E.2d 1191 (1993); *McCaskill v. Philadelphia Housing Authority,* 419 Pa.Super. 313, 615 A.2d 382 (1992); *Guyer v. Hugo Pub. Co.,* 830 P.2d 1393 (Okla.Ct.App. 1991); *Carr v. Wittingen,* 182 Mich.App. 275, 451 N.W.2d 584 (1990); *Wade v. United States,* 745

ed States that the heirs of a non-viable fetus have no right to bring a cause of action for wrongful death.

This Court is aware of only three jurisdictions—Georgia, Louisiana and Missouri—that clearly deviate from this majority view. However, these states' interpretations are firmly rooted in their unique statutory schemes and find no purchase in Idaho's statutory framework. In *Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100 (1955), the Court of Appeals of Georgia pronounced its belief that a cause of action for wrongful death may accrue at the point a fetus is "quick," i.e., able to stir in its mothers womb. *Id.* 87 S.E.2d at 103. The Court based this pronouncement on the fact that, at the time, Georgia's statutory criminal scheme required as an element of feticide—murder of an unborn fetus—that the fetus be "so far developed as to be ordinarily called 'quick'." Ga. Code Ann. § 26–1103 (Harrison 1953).

In *Danos v. St. Pierre*, 402 So.2d 633, 639 (La.1981), the Supreme Court of Louisiana held that a cause of action for the wrongful death of a fetus may be brought any time after the fetus is conceived. The *Danos* court focused on a recent legislative enactment by the Louisiana legislature that declared that "a human being exists from the moment of fertilization and implantation." *Danos*, 402 So.2d at 637. The Missouri Court of Appeals in *Connor v. Monkem Company, Inc.*, 1994 WL 493561 (Mo.App.E.D. 1994), likewise focused on a similar statutory enactment to find that a cause of action potentially exists for wrongful death from the moment of conception. *Id.*

Idaho currently has no statute that would correspond to the statutes in effect in these three states, and this Court refuses to superimpose interpretations arising from Georgia, Louisiana, and Missouri's unique statutory scheme upon Idaho's statutes.[6] I believe that the Idaho Supreme Court would today

find persuasive the majority view that the term "person," when used in a wrongful death statute, does not include an unborn fetus who is non-viable at the time of its death.

The Santanas argue that this Court should not place a great deal of reliance on the majority rule, positing that the Idaho legislature's failure to address viability in 1984 when it amended Sections 5–310 and 5–311 somehow constituted a tacit rejection of viability as the beginning of legal personhood. The Court does not share the Santanas' interpretation.

In the first place, it cannot be reasonably argued that legislative silence in 1984 constituted an adoption of the *Volk* court's interpretation because, at least with respect to the interplay between viability and Section 5–310 and 5–311, there was nothing for the legislature to adopt. The *Volk* court clearly stated that it reached no conclusion as to whether recovery in a wrongful death action can be predicated upon the injury and death of a non-viable fetus. *Volk*, 103 Idaho at 574, 651 P.2d at 15.

Furthermore, there is sufficient evidence of legislative intent to explain why the Idaho legislature saw fit to amend the statute. In the legislature's own words, the 1984 amendment effected changes,

> Relating to actions for personal injury and wrongful death; amending Section 5–310, Idaho Code, to provide for a civil action when the injury of a minor child, a minor child who was married at the time, or the ward of a guardian is caused by the wrongful act or neglect of another; repealing Section 5–311, Idaho Code; and amended Chapter 3, Title 5, Idaho Code, by the addition of a new Section 5–311, Idaho Code, to provide for a civil action when the death of a person is caused by the wrong-

F.Supp. 1573 (D.Haw.1990) (construing Hawaii's wrongful death statute); *Austin v. Regents of University of Cal.*, 89 Cal.App.3d 354, 152 Cal.Rptr. 420 (1979).

**6.** Moreover, even if Idaho did have such statutes, the Idaho Supreme Court's refusal in *Volk* to read Idaho Code § 32–102 *in pari materia* with

§ 5–310 indicates reluctance on the Idaho Supreme Court's behalf to reason from statutes that "deal with different subject matters and attempt to protect different interests" in construing Idaho's wrongful death statute. *Volk*, 103 Idaho at 574, 651 P.2d at 15.

ful act or neglect of another and to define the term heirs.

Idaho Sess. Laws, ch. 158, p 385 (emphasis added). This statement does not expressly indicate any intent to expand or change Section 5–310's definition of "person" to include a fetus from the moment of conception. Similarly, the legislative history of Idaho Code § 5–311 contains no such expression of intent:

> This bill expands the class of persons who are "heirs" of a decedent for the purpose of bringing a wrongful death action to include such persons as stepchildren and others who were actually dependant upon the decedent for support.

Statement of Purpose RS 10409, S.B. 1341. I find that no meaningful implication can be attached to the failure of the Idaho legislature to address viability when amending Sections 5–310 and 5–311.

The Santanas next argue that adopting viability as the point of demarcation for legal personhood under Section 5–311 would contravene the Idaho Supreme Court's expressions of policy in both *Volk* and *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984). In *Blake*, the Idaho Supreme Court recognized a new cause of action for wrongful birth.[7] In *Blake*, the plaintiff alleged that during November of 1974, before her baby was viable, the defendant physician had negligently failed to diagnose her rash as a symptom of rubella. The baby was born with severe congenital defects in July of 1975. Writing for the majority, Justice Huntley reversed the district court judge's determination that wrongful birth was not a recognized action in Idaho. Justice Huntley first discounted the difficulty of measuring damages and the public policy against allowing tort damages for the denial of an opportunity to take an embryonic life as legitimate reasons for not recognizing such a cause of action, saying:

> Changes in judicial attitude and the recognition of a woman's constitutionally protected right to obtain an abortion (in the

first trimester of pregnancy at least) have led to a wholesale rejection of these arguments.

*Id.* at 256, 698 P.2d at 318. The *Blake* court then held that "an action for wrongful birth would lie, reasoning in part that society has a vested interest in … requiring that wrongdoers redress the natural and probable consequences of every substantial breach of the applicable duty of care…." *Id.* at 257, 698 P.2d at 319. Finally, the *Blake* court held that no action would lie in favor of the child itself for wrongful life, reasoning that:

> Basic to our culture is the precept that life is precious. As a society, therefore, our laws have as their driving force the purpose of protecting, preserving and improving the quality of human existence. To recognize wrongful life as a tort would do violence to that purpose and is completely contradictory to the belief that life is precious.

*Blake*, 108 Idaho at 260, 698 P.2d at 322.

The Santanas contend, based on the *Volk* and *Blake* courts' reasoning, (1) that the difficulty of measuring damages should not override the requirement that wrongdoers redress the natural and probable consequences of their wrongs, (2) that a requirement of viability as a prerequisite to a wrongful death suit creates the potential that a wrongdoer will go unpunished if viability is imposed as the dividing line, and (3) that the *Blake* Court's affirmation of the value of life implies that the Idaho Supreme Court would interpret personhood under Section 5–311 as beginning at conception, not at viability. I do not agree.

*Blake* is distinguishable from the case at hand in that, unlike the situation presently before the Court, a "wrongful birth" by definition always involves a viable child. *Volk* is similarly distinguishable in that the Court was not faced with the question of whether a non-viable unborn fetus has a cause of action. Because the expressions of policy in *Blake* and *Volk* were made against the backdrop of

---

7. "In this type of action the parents of a child born with birth defects assert that the physician's negligence precluded their making an informed decision as to whether to have a child, and that they would have avoided conception or terminat-

ed the pregnancy had they been properly advised of the risk of congenital impairment." *Blake v. Cruz*, 108 Idaho 253, 255, 698 P.2d 315, 317 (1984) (citations omitted).

viability, they do not represent the final word on what policy considerations should be taken into account in determining whether a cause of action should lie for the wrongful death of a *non-viable* fetus. As the Superior Court of Pennsylvania stated:

> Before viability, a determination of damages for death of the fetus would be entirely speculative. Whether the child would be born healthy and talented would be incapable of prediction with reasonable certainty.

*Coveleski v. Bubnis,* 391 Pa.Super. 409, 571 A.2d 433, at 435 (1990). The uncertainty of whether a fetus will ultimately be born alive is greatest during the beginning of a pregnancy, and the mother's own cause of action for negligently inflicted injury may include the intangible damage resulting from a failed pregnancy. *Rambo v. Lawson,* 799 S.W.2d 62 (Mo.1990). Furthermore, as the Kansas Supreme Court reasoned:

> "[V]iability is not an illogical condition precedent when a negligently injured fetus is stillborn. A non-viable fetus is not capable of living outside its mother's womb; it cannot maintain a separate and distinct existence. Thus a non-viable fetus which dies before birth has never become an independent living person."

*Humes v. Clinton,* 246 Kan. 590, 596, 792 P.2d 1032, 1037 (1990).

Therefore, based on the better-reasoned view of the majority of jurisdictions, I hold that under Idaho Code § 5–311, viability marks the beginning of legal personhood, and the right to assert a cause of action for the wrongful death of fetus is correspondingly limited to cases involving the death of a viable fetus.

### D.

**Resort to Idaho Workers' Compensation Law is Unnecessary to Resolve the Issues Remaining Before the Court**

Zilog argues that any action that Plaintiff may have for the wrongful death of a non-viable fetus is preempted by Idaho Worker's

Compensation law. Because I have already found that no cause of action lies for the death of a non-viable fetus, it is unnecessary to reach this issue and the Second Motion to Dismiss will be denied as being moot.[8]

### *ORDER*

IT IS HEREBY ORDERED:

(1) That Plaintiffs' Motion for Certification of Issues to the Idaho Supreme Court (Dkt. # 7) is DENIED;

(2) That Defendant Zilog's First Motion to Dismiss (Dkt. # 3) is GRANTED;

(3) That Defendant Zilog's Second Motion to Dismiss (Dkt. # 5) is MOOT; and

(4) That the Complaint is DISMISSED in its entirety.

---

**8.** The Plaintiffs have withdrawn their claim for medical expenses on behalf of Mrs. Santana and an examination of the Complaint reveals no remaining arguable state law claims that would not be subject to the preemptive effect of Idaho Worker's Compensation law.