THOMAS v STUBBS

Docket No. 174778. Submitted February 22, 1996, at Detroit. Decided July
    30, 1996, at 9:05 A.M.

Monica Thomas, as personal representative of the estates of baby girl
    McDowell, deceased, and baby boy McDowell, deceased, brought a
    wrongful death action in the Wayne Circuit Court against James W.
    Stubbs, M.D., alleging that the premature delivery of the twins
    resulted from a failure to diagnose and treat an incompetent cervix.
    Thomas delivered the twins at approximately twenty weeks' gesta-
    tion, they lived momentarily, and then died. The twins had measur-
    able heart rates for five minutes after the delivery. The defendant
    filed a motion for summary disposition, claiming that the twins
    were not viable at the time of the miscarriage and that Michigan
    does not recognize a cause of action for wrongful death of a non-
    viable fetus. The plaintiff did not dispute that the twins were not
    viable at the time of the delivery, but alleged that the proper
    inquiry was whether they were born alive. The trial court, Sharon
    Tevis Finch, J., granted summary disposition for the defendant,
    concluding that the wrongful death act, MCL 600.2922(1); MSA
    27A.2922(1), did not apply to the fetuses at issue because it "is
    intended to apply to a life which, absent some wrongful act, goes
    on, and will go on, and can be assumed to go on." The plaintiff
    appealed.

    The Court of Appeals *held*:

    1. The relevant issue in determining whether a wrongful death
    action may be pursued is whether the death of a "person" resulted
    from the alleged wrongful act, neglect, or fault of another. The rele-
    vant requirement for personhood is being "born alive." A child is
    "born alive" and thus a "person" if, following expulsion or extrac-
    tion from the mother, there is no irreversible cessation of respira-
    tory and circulatory functions or brain functions.

    2. The trial court erroneously focused on whether the fetuses
    were viable at the time of the delivery, rather than on whether they
    were "born alive" and therefore "persons" within the scope of the
    wrongful death act. The matter must be remanded to the trial court
    for reconsideration of whether the fetuses were "born alive" and

accordingly "persons" on whose behalf a wrongful death action may be pursued.

Reversed and remanded.

TORTS — WRONGFUL DEATH — WORDS AND PHRASES — "PERSON" — "BORN ALIVE."

The relevant issue in determining whether a wrongful death action may be pursued is whether the death of a "person" resulted from the alleged wrongful act, neglect, or fault of another; the relevant requirement for personhood is being "born alive"; a child is "born alive" and thus a "person" if, following expulsion or extraction from the mother, there is no irreversible cessation of respiratory and circulatory functions or brain functions; being born alive is distinct from viability (MCL 600.2922[1]; MSA 27A.2922[1]).

*Thurswell, Chayet & Weiner* (by *Kevin J. Cox* and *Tammy J. Reiss*), for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *John E. McSorley* and *David M. Shafer*), for the defendant.

Before: MURPHY, P.J., and MARKMAN and K. V. FINK,[*] JJ.

MARKMAN, J. Plaintiff appeals as of right a circuit court order granting defendant's motion for summary disposition in this wrongful death action. We reverse and remand.

According to plaintiff's complaint, in January 1990 she delivered twins at approximately twenty weeks' gestation who lived "momentarily," then died. She alleged that the premature delivery resulted from a failure to diagnose and treat an incompetent cervix. She filed the present wrongful death action in September 1993 as personal representative of the twins. We note that a medical malpractice action by the

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

mother appears to be barred by the statute of limitations.

Defendant filed a motion for summary disposition, claiming inter alia that the fetuses were not viable at the time of the miscarriage and that Michigan does not recognize a wrongful death cause of action for a nonviable fetus. In plaintiff's response to the motion, she provided copies of hospital delivery records indicating that the twins at issue were "liveborn" and that they had heart rates at one and five minutes after delivery.[1] At the hearing regarding this motion, plaintiff did not dispute that the twins were not viable at the time of delivery; rather she focused on her claim that they were "born alive."

The trial court allowed the parties to produce additional documents. Defendant provided the affidavits of two experts that indicated that fetuses are not viable at twenty weeks despite the existence of a heartbeat upon delivery. Plaintiff provided a medical report regarding the deliveries that stated: "Some minimal spontaneous movements were noted in twin B at the time of delivery." Plaintiff also provided the affidavit of an expert who stated that the delivery records for the twins show their "condition" was "live born" rather than stillborn or suffering early neonatal death, that they had measurable heart rates for at least five minutes after birth although they received no resuscitation, that they were sent to the high-risk unit, and that "the children were born alive, having survived the delivery."

---

[1] The delivery records indicate that the twins had heart rates "< 100" at one and five minutes after delivery.

The trial court granted defendant's motion for summary disposition. It concluded that the mother may have a malpractice case but that the wrongful death act did not apply to the fetuses at issue because it "is intended to apply to a life which, absent some wrongful act, goes on, and will go on and can be assumed to go on."

This Court reviews decisions regarding motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

> MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to [judgment] as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Id.*]

The wrongful death act, MCL 600.2922(1); MSA 27A.2922(1), states:

> Whenever the death of a *person* or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony. [Emphasis added.]

Thus, the relevant issue in determining whether one may successfully pursue a wrongful death action is whether the death of a "person" resulted.

This Court has already addressed the issue of the definition and necessary characteristics of personhood in the context of criminal statutes. In *People v Guthrie*, 97 Mich App 226; 293 NW2d 775 (1980), this Court considered the definition of "person" for purposes of the statute prohibiting negligent operation of a vehicle causing homicide, MCL 750.324; MSA 28.556. While it questioned the rule as archaic, it concluded that the relevant requirement is that one be "born alive." *Guthrie* at 229, 237. More recently, this Court reiterated its adherence to the "born alive" rule, *People v Selwa*, 214 Mich App 451, 458, n 1; 543 NW2d 321 (1995), while also stating that it shared the *Guthrie* Court's concerns about the rule being outmoded in light of modern medical practice.

In *Selwa, supra,* this Court analyzed what constituted being "born alive" for purposes of the statute prohibiting negligent operation of a vehicle causing homicide, MCL 750.324; MSA 28.556. It first considered MCL 333.2804(3); MSA 14.15(2804)(3), which states that "live birth" is a term defined by departmental rule that is to conform to the definition recommended by the federal agency responsible for vital statistics. *Selwa* at 459. The Court, at 459, cited 1981 AACS, R 325.3201(1)(d), which states:

> "Live birth" means the complete expulsion or extraction from a pregnant woman of a product of human conception which, after such expulsion or extraction, shows any evidence of life, whether or not the umbilical cord has been cut or the placenta is attached.

It concluded at 462:

> However, to conclude that one is "alive" if there is present "some evidence of life" is a tautology and begs the question of what constitutes "life" or being "alive." Such a circular definition provides utterly no legal guidance to this Court.

The *Selwa* Court then considered the Determination of Death Act, MCL 333.1021 *et seq.*; MSA 14.15(1021) *et seq.*, now MCL 333.1031 *et seq.*; MSA 14.15(1031) *et seq. Selwa* at 459-461. MCL 333.1033; MSA 14.15(1033) states in pertinent part:

> (1) An individual who has sustained either of the following is dead:
> (a) Irreversible cessation of circulatory and respiratory functions.
> (b) Irreversible cessation of all functions of the entire brain, including the brain stem.

On the basis of this statutory definition of death, the *Selwa* Court set forth the following definition of "born alive" and "person" at 464:

> Accordingly, a child is "born alive" and thus a "person" under the negligent homicide statute if, following expulsion or extraction from the mother, there is lacking an irreversible cessation of respiratory and circulatory functions or brain functions.

Because the majority in *Selwa* found sufficient legislative guidance regarding the terms "person" and "born alive," it rejected the dissent's resort to common law and its focus on the narrower viability standard—whether the child possesses an "independent and separate existence" from the mother. *Id.* at 464, 466.

There is no reason why the *Selwa* definition of "born alive" should not be applied in the instant context to determine if plaintiff may pursue a wrongful death action.[2] This definition resulted from an analysis of relevant statutes and therefore accords proper deference to legislative guidance regarding this issue. Here, the trial court erroneously focused on whether the fetuses were viable at the time of delivery, rather than on whether they were "born alive" and therefore "persons" within the scope of the wrongful death act. We will accordingly remand this matter to the trial court for reconsideration of whether the fetuses were "born alive" as defined by *Selwa* and accordingly "persons" on whose behalf a wrongful death action may be properly pursued.

Further support for this analysis is found in this Court's recent summary of the state of the law regarding actions for prenatal injuries in *Martin v St John Hosp & Medical Center Corp*, 205 Mich App 486, 488; 517 NW2d 787 (1994):

> Under Michigan common law, a negligence action for prenatal injury may be maintained on behalf of a fetus if it is subsequently born alive. *Womack v Buchhorn*, 384 Mich 718, 725; 187 NW2d 218 (1971). A negligence action may also be maintained if the fetus was viable at the time of the injury. *O'Neill v Morse*, 385 Mich 130; 188 NW2d 785 (1971).

*Martin* indicates that a negligence action for prenatal injuries may be maintained (a) if the fetus is subsequently born alive *or* (b) if the fetus was viable at the

---

[2] The *Selwa* Court noted that the previous version of the Determination of Death Act stated that it applied "for all purposes in this state, including the trials of civil and criminal cases" and that there was no indication that later exclusion of this language was intended to preclude its application in the criminal context. *Id.* at 463.

time of the injury. See also *Jarvis v Providence Hosp*, 178 Mich App 586, 591; 444 NW2d 236 (1989). Here, the fetuses were not viable at the time of delivery. However, where a fetus is subsequently "born alive," *Martin* and *Jarvis* indicate that a negligence action may be pursued on its behalf without the additional requirement that it also be viable. While the *Martin* Court did not engage in a statutory analysis to ascertain what constitutes a "person," as the *Selwa* Court did, it similarly concluded that a fetus that is "born alive" may bring a negligence action for prenatal injuries. *Martin* thus supports our conclusion that the relevant inquiry to determine whether the twins were "persons" is whether they were "born alive." *Martin's* recognition that being "born alive" and being viable are alternative criteria, under which a negligence action may be brought for prenatal injuries, also supports the conclusion that being "born alive" is distinct from viability.

For these reasons, we reverse the trial court's order granting defendant's motion for summary disposition and remand this matter for reconsideration in light of the definition of "born alive" set forth in *Selwa*.

Reversed and remanded.